### WESTERN UNION TELEGRAPH CO. v. PARHAM.

(Court of Civil Appeals of Texas. Dallas. Nov. 30, 1912. On Motion for Rehearing, Jan. 18, 1913.)

1. TELEGRAPHS AND TELEPHONES (§ 37*)— MESSAGES — CONDITIONS OF CONTRACT — WAIVER.

A telegraph company, after receiving a message by telephone according to its custom, cannot rely on conditions in its printed forms; such as conditions requiring extra charges where a sendee lives beyond the free delivery limits.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 23, 24, 29, 30, 32; Dec. Dig. § 37.*]

2. TELEGRAPHS AND TELEPHONES (§ 38*)— MESSAGES—CONDITIONS OF CONTRACT — EXTRA CHARGES—WAIVER.

Where a telegraph company did not demand an extra charge upon receiving a message for delivering beyond the free delivery limits,

and the contract did not require prepayment of such charge, failure to deliver promptly is not excusable on the ground that the sendee resided beyond such limits, though the sender knew that fact, and the company did not.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. § 38.*]

3. TRIAL (§ 252*)—INSTRUCTIONS — APPLICABILITY TO ISSUES.

Defendant telegraph company requested a charge that it appeared from the undisputed evidence that the mistake in the sendee's name was caused by plaintiff's own agent, and that if the jury found there was any delay in delivering, and also found that the mistake in the spelling of sendee's name, as it appeared in the message, caused or contributed to the delay, they should find for defendant, held, that it was error to refuse the requested charge; the evidence making it an issue as to whether the mistake in spelling the sendee's name caused the delay.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

4. TELEGRAPHS AND TELEPHONES (§ 73*)—MESSAGES—DELAY IN DELIVERY—ACTIONS—JURY QUESTIONS.

Evidence, in an action for delay in delivering a message, held to raise the issue of whether the mistake in the spelling of the sendee's name, caused by plaintiff's agent, contributed to the delay.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 76; Dec. Dig. § 73.*]

Appeal from District Court, Hill County; C. M. Smithdeal, Judge.

Action by C. W. Parham against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

N. L. Lindsley and E. G. Senter, both of Dallas, for appellant. H. C. Bishop, of Hubbard City, and H. G. Hart and R. M. Vaughan, both of Hillsboro, for appellee.

TALBOT, J. Appellee sued the appellant to recover damages for mental anguish alleged to have been suffered by his wife, Mrs. Fannie Parham, on account of the failure of appellant to properly transmit and deliver to her a telegram announcing the death of her father, by reason of which she was prevented from attending his funeral and of seeing his remains before interred. The telegram read as follows: "Lufkin, Texas, 2–12–11. To Mrs. Fannie Pharam, Hubbard, Texas. Mr. E. Chittenholl is dead. Come. [Signed] A. K. Martin, Pollock, Texas."

The petition alleges: That the plaintiff, C. W. Parham, is the husband of the said Mrs. Fannie Parham. That on and long prior to the 12th day of February, 1911, plaintiff and his wife resided in Hubbard Hill county, Tex. That on said date the defendant owned and operated a telegraph line from Lufkin, Tex., to the city of Hubbard in Hill county, Tex. That Mrs. Parham's father, E. Chisenhall, prior to his death, resided in Pollock, Angelina county, Tex. That on the 12th day of February, 1911, the said Chisenhall, who had long prior thereto been quite ill, suddenly

grew worse and died at the home of A. K. Martin, who resided at Pollock, Tex., the said Mrs. Fannie Parham then being at her home with plaintiff in said city of Hubbard, a distance of about 150 miles from the said city of Pollock. That, immediately after the death of the said Chisenhall, the said A. K. Martin, desiring to inform plaintiff's wife of the death of her father, "by means of telephonic communication with defendant's agent at Lufkin, Tex., from said Pollock, Tex., communicated to defendant's agent at Lufkin, the following message to be transmitted by telegraph to plaintiff's wife, Mrs. Fannie Parham, and delivered to her in Hubbard, Tex., to wit: 'To Mrs. Fannie Parham, Hubbard, Texas. Mr. Chisenhall is dead. Come. A. K. Martin, Pollock, Texas.' That defendant accepted said message and agreed to transmit same correctly and deliver same within a reasonable time to the said Mrs. Fannie Parham, in Hubbard, Tex. * * * That said telephonic message was not correctly transmitted, same being transmitted as follows: 'Lufkin, Texas, 2/12/11. To Mrs. Fannie Pharam, Hubbard, Texas. Mr. Chittenholl is dead. Come. J. K. Martin, Pollock, Texas.' That the name of the person 'Mrs. Fannie Pharam' was intended for and meant Mrs. Fannie Parham, the wife of plaintiff, and was so understood when said message was received by the said Mrs. Fannie Parham. That the name 'Mr. Chittenholl' contained in said message was intended for and meant to be Mr. Chisenhall, and was so understood by the said Mrs. Fannie Parham, when said message was received by her, and that the name 'J. K. Martin' signed to said message was intended for and meant to be A. K. Martin, the person who in fact sent said message, and was so understood by the said Mrs. Fannie Parham, when said message was received by her. That said message as transmitted was received by defendant's agent in Hubbard City, at about 5:20 p. m. on February 12, 1911, and could, by the exercise of reasonable diligence and ordinary care, have been delivered to Mrs. Parham on the same evening in time for her to have attended the funeral of her father which occurred in Pollock, Tex., about 3 p. m. on February 13, 1911, and which she would have done. That the defendant failed to deliver the message within a reasonable time, and the said Mrs. Fannie Parham was prevented from being present at the burial of her father and from seeing his remains, by reason of which she has suffered mental pain and anguish, to her damage in the sum of $1,995, together with the amount paid for the message on its receipt, 25 cents, for which said amounts she asked judgment."

The defendant pleaded a general denial, and specially, among other things, as follows: That the message described in plaintiff's petition was telephoned by plaintiff's agent,

who was at Pollock at the time, to the defendant's agent at Lufkin, Miss Jennie Lively. That the transmission of said message from Pollock and its reception at Lufkin were the acts of plaintiff's agent. That it was against the rule and custom of the defendant to receive messages by phone, which was well known to the sender. That said message was so received by the defendant's agent at the special instance and request of the sender as a special and personal accommodation to him and for the plaintiff, the said Jennie Lively, acting in so doing as the agent of plaintiff, received said message as plaintiff's agent, and wrote it out and filed it in the defendant's office at Lufkin, reading as follows: "Mrs. Fannie Pharam, Hubbard City, Texas. Mr. Chittenholl is dead. Come. [Signed] J. K. Martin, Pollock, Texas." That said message as so written and filed with the said defendant by said Jennie Lively as the agent of plaintiff as aforesaid, was promptly transmitted by the defendant to its office at Hubbard City, Tex., and that, as soon as it was received by its agent at said point, he made and caused to be made every effort that was possible to deliver the same to the addressee, using all available means to discover the addressee without delay. That such efforts were without avail at the time, and that defendant's agent at Hubbard City could find no such person as Mrs. Fannie "Pharam" at said place; one of the reasons being that the message was improperly addressed, being intended for Mrs. Fannie Parham. That said mistake in the address was the act of plaintiff's agent as aforesaid, and that it caused and contributed to cause the delay in the delivery of said message to said Mrs. Fannie Parham. And hence plaintiff is not entitled to recover herein.

A jury trial resulted in a verdict and judgment for the plaintiff in the sum of $1,627, and the defendant appealed.

Assignments of error from the first to the seventh, inclusive, complain of the admission, over the defendant's objection, of certain testimony offered by the plaintiff. This testimony was, in our opinion, admissible, and said assignments, without discussion, will be overruled.

[1] The eighth assignment complains of the court's action in refusing to permit the defendant to show what were, under its regulations, the free delivery limits, in a town of the size of Hubbard. There was no error, we think, in this action of the court. It seems to be well settled that a telegraph company, after accepting a message by telephone, cannot claim that the conditions in its printed forms are applicable, where it is accustomed to receive such messages. Gore v. Western Union Telegraph Co., 124 S. W. 977.

[2] Besides, it appears in the case at bar that the defendant, without demand for extra charge or refusal to deliver the message on the ground that the place of delivery was beyond its free delivery limits, did deliver it to Mrs. Parham at her residence in the city of Hubbard. This being true, the fact that Mrs. Parham resided beyond defendant's free delivery limits, if she did so reside, became unimportant in determining defendant's liability. There is neither allegation nor proof that a demand was made by any agent of defendant for extra charge, or that the contract for the transmission and delivery of the message provided that such charge should be prepared by the sender or sendee. In such case, although it was alleged that the sender at the time he delivered the message knew, while the defendant did not know, that the addressee lived beyond the free delivery limits, the defendant's failure to deliver the telegram promptly could not be excused on the ground that the sendee resided beyond its free delivery limits. Western Union Telegraph Co. v. Ayres, 47 Tex. Civ. App. 557, 105 S. W. 1166; Western Union Telegraph Co. v. Harris, 132 S. W. 876.

Complaint is made of the following paragraph of the court's charge: "If you believe from the evidence that a message reading as follows: 'Mrs. Fannie Pharam, Hubbard City, Texas. Mr. Chittenholl is dead. Come' —and signed by J. K. Martin, was transmitted by the defendant and received at Hubbard City office about 5:20 o'clock p. m. on February 12, 1911, and that said message was intended for Mrs. Fannie Parham, the wife of plaintiff, and that the said Mrs. Fannie Parham would have known from said message that it announced the death of her father, and further believe from the evidence that had said message been delivered to Mrs. Fannie Parham within a reasonable time after the same was received at the Hubbard City office of the defendant, if it was received, the said Mrs. Fannie Parham could and would have gone to Pollock, Tex., and could and would have reached there in time to be present at the burial of her father, and further believe from the evidence that the agents of the defendant did not deliver said telegram to said Mrs. Fannie Parham in a reasonable time nor in time for her to go to Pollock, Tex., and be present at the burial of her father, and that in failing to deliver said message within a reasonable time, if they did, the defendant's agents were guilty of negligence as that term is defined elsewhere in this charge, and that by reason of such failure to deliver said message within a reasonable time after it was received at Hubbard City, Tex., if there was a failure to deliver same within a reasonable time, said Mrs. Fannie Parham was prevented from attending the burial of the body of her father, and that by reason of being prevented, if she was, from attending the burial of her father, she suffered great mental pain and anguish, you will find for the plaintiff, unless under the evidence and instructions hereinafter given you find for the defendant."

This charge is objected to on several grounds, but none of the objections are well taken, in our opinion, unless it is the third. This objection is that "said charge was error because it failed to include, as an essential requirement to a verdict for the plaintiff, that the defendant was only required to use ordinary care to discover for whom the message was intended; it being an undisputed fact that the error in the address was the fault of the plaintiff's agent who sent the message."

Conceding that the testimony without contradiction showed that the error in spelling Mrs. Parham's name was wholly the fault of the plaintiff's agent who sent the message, still we are inclined to think the charge in question was not affirmative error, especially so in view of the testimony of the witness J. H. Johnson to the effect that about 6 o'clock p. m. of the day the telegram was received by defendant's agent at Hubbard, the boy, Clyde Tucker, sent out by defendant to deliver the telegram showed it to him (Johnson), and that he (Johnson) told the boy he thought the telegram was for Mrs. Parham, and that he directed him how to find her residence. The telegram was received at Hubbard about 5:20 o'clock p. m. on Sunday, February 12, 1911, and the witness Johnson above referred to, after stating that he saw the telegram and told the boy that it was for Mrs. Parham, said: "I am not sure what time of the day that was. It was in the latter part of the day some time. I am not sure whether it was before or after dark. My best judgment is that it was close to 6 o'clock, but I might be mistaken about that because I had been busy that day and was busy at the time. I think it was February, Sunday, preceding the 15th. I am sure it was Sunday." It is true the boy Clyde Tucker contradicts the witness Johnson with respect to the time he was informed by Johnson that the telegram was for Mrs. Parham, testifying that he received such information on the morning of the 13th of February, and that he then proceeded to find the residence of Mrs. Parham and delivered to her the message; but the charge complained of presented plaintiff's theory of the case and was probably applicable to that phase of the testimony offered by him and correct as far as it went. We think, however, the charge would have been more accurate, as applied to the whole evidence, if it had been so framed as to eliminate the objection under consideration.

[3] The thirteenth assignment of error complains of the court's refusal to give the following special charge requested by defendant: "You are instructed that it appears from the undisputed evidence herein that the mistake in the address of the message in controversy was caused by the plaintiff's own agent. You are therefore charged that if you should find that there was any delay in the delivery of the message after it reached Hubbard City, and if you should find that the mistake in the spelling of the name of plaintiff's wife as it appears in the message caused or contributed to cause such delay, if any, you will return a verdict for the defendant." The refusal of this charge was error, for which the judgment must be reversed. The defendant pleaded that the message was misdirected through the fault of the sender's agent; that it was addressed to Mrs. Fannie Pharam, and not to Mrs. Fannie Parham, for whom it was intended; and that said mistake caused the delay in the delivery of said message. The uncontroverted testimony shows, as alleged, that the spelling of Mrs. Parham's name "Pharam" in the message was caused by J. W. Gilchrist, the sender's agent. Miss Jennie Lively, manager for the appellant at Lufkin, testified without contradiction that the telegram as received at Hubbard was an exact copy of the one she received by telephone to be transmitted; that the spelling of the name of the addressee is just exactly as she received it over the telephone. J. W. Gilchrist testified: "I was general manager of the Boden Lumber Company at Pollock. We had the Southwestern telephone in our office. I received messages over the phone. I cannot remember whether I had a business transaction with Martin (sender of the message) on that day, but I do remember that I had a transaction with him concerning sending a message concerning Chisenhall's death. * * * To the best of my recollection Mr. Martin did not file with me any written message to be communicated, but I rather think that I made the data myself for a communication to some one concerning the death of Mr. Chisenhall for Mr. Martin. * * * I went to considerable trouble, trying to get the Western Union, and got Miss Lively, who was the operator, and delivered the message. * * * I don't remember the wording of the message, but I do remember that it was concerning the death of Mr. Chisenhall. I don't remember whether any one requested me to spell Mrs. Fannie Parham's name or not, but I think Miss Lively, the operator, asked me to spell the name of the person to whom I was trying to send the message for Mr. Martin."

[4] This is all of the material testimony regarding the mistake in spelling Mrs. Parham's name, and whether the mistake in spelling her name caused the delay in the delivery of the telegram was an issue clearly raised by the evidence; indeed, it was one of the most vital, if not the pivotal, issue in the case, and the charge requested, or some equivalent charge, should have been given.

It is also contended that the verdict is excessive. Without reference to the claim of appellant that the evidence in the case rebutted the inference of affection from relationship, we are inclined to agree with this contention. As has been seen, the verdict was for $1,627.

The other assignments disclose no reversible error.

For the reason indicated, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

A. careful consideration of the very strong motion for a rehearing filed by the able counsel for the appellee has failed to convince us that we erred in reversing and remanding this cause for a new trial. It is clear to our minds that the evidence not only raised, but demanded the submission of the issue which appellant sought to have submitted for determination by the jury in the special charge, the refusal of which resulted in the reversal of the case, as shown in our original opinion.

The motion for a rehearing is therefore overruled.