WESTERN UNION TELEGRAPH CO. v. PARHAM. (No. 6738.)

(Court of Civil Appeals of Texas. Dallas. March 29, 1919.)

1. APPEAL AND ERROR ☞1004(1)—DAMAGES —MENTAL SUFFERING.

There is no fixed rule for measuring damages to be allowed for mental suffering, and, jury being exclusive judges of facts, it must clearly appear that amount awarded is excessive before an appellate court will be authorized to disturb a verdict.

2. TELEGRAPHS AND TELEPHONES ☞71 — DAMAGES—MENTAL SUFFERING—AMOUNT.

In an action against a telegraph company for damages by reason of delay in a message whereby plaintiff was prevented from attending

the funeral of her father, a verdict of $1,627 *held* not excessive.

Appeal from District Court, Hill County; C. M. Smithdeal, Judge.

On remand from the Supreme Court (206 S. W. 839). Judgment of trial court affirmed. For former opinion, see 152 S. W. 819.

E. G. Senter, of Washington, D. C., for appellant.

R. M. Vaughan, of Hillsboro, H. G. Hart, of Houston, and H. C. Bishop, of Hubbard, for appellee.

TALBOT, J. This suit was instituted by the appellee to recover damages alleged to have been sustained on account of the failure of the appellant to properly transmit and deliver to appellee's wife, Mrs. Fannie Parham, a telegram announcing the death of her father, by reason of which she was prevented from attending his funeral. The case was submitted to this court and an opinion rendered November 30, 1912, reversing the judgment and remanding the cause for a new trial. To that opinion, which is reported in 152 S. W. 819, we here now refer for a full statement of the nature of the case, the questions discussed, and the facts upon which our decision was based. The judgment of the district court was reversed, and cause remanded, as the opinion referred to will show, because this court reached the conclusion that error was committed in the court's refusal to give a special charge requested by the appellant; all other questions raised on the appeal being definitely decided against appellant except the complaint that the verdict was excessive. Upon application of the appellee a writ of error was granted by the Supreme Court, and in an opinion written by Judge Taylor of the Commission of Appeals and adopted by the Supreme Court our holding that the trial court erred in refusing the special charge requested by the appellant, to which we have referred, was reversed, and, in view of an expression in our opinion to the effect that we were inclined to agree with the contention of the appellant that the verdict is excessive, the cause was remanded to this court "for disposition on its merits." The opinion of the Commission of Appeals will be found reported in 206 S. W. 839. The question now to be decided is whether or not the verdict and judgment are excessive. As stated above, we heretofore reversed and remanded the case because we were of opinion that the district court erred in refusing the special charge quoted in our original opinion, which was requested by appellant. Having concluded that the case should be reversed and remanded for that reason, the question of the excessiveness of the verdict was not as fully and carefully examined and considered as it otherwise would have been. Since the return of the record to this court

from the Supreme Court, however, a thorough examination and consideration of the evidence has been made with the conclusion reached that we would not be authorized to reverse the judgment on the ground that the verdict is excessive. Mrs. Parham was six years old when her mother died. Soon thereafter she and the other children went to their grandmother's home near Hubbard City to live. Two or three years after this her father, E. Chisenhall, married again. This marriage took place in Arkansas, where the couple lived six or seven years, and then removed to east Texas. About a year after his removal from Arkansas to Texas Mr. Chisenhall's second wife died. After the death of his second wife he lived near Brownboro, Tex. About ten years after the death of Mr. Chisenhall's second wife, he married again, and lived at Pollock, Tex. His third wife lived about four years, and died at Pollock, Tex. From the time Mrs. Parham went to her grandmother's home her grandmother and uncle took care of and supported her. Her father, however, sent her money at times. Mrs. Parham's grandmother died when Mrs. Parham was eighteen years old, and after that time she continued to live with her uncle about nine or ten years, when she married and went to her own home. Mrs. Parham never saw her father's last wife. Her father and his second wife visited her at her grandmother's home. The evidence fails to show any estrangement or unkind feelings between Mrs. Parham and her father, but indicates a kindly and affectionate feeling the one towards the other. Mrs. Parham, among other things, testified:

"I heard from my father after we were living with our grandmother at Hubbard. He visited us right soon after he went back and then every year or two afterwards. I heard from him by letter. I do not remember how often our father visited his children while they were at Hubbard up to the time of the death of his second wife; I was small; I suppose it was two or three times, but I know he visited us often."

She further said:

That after she and her husband moved to Hubbard City her father visited them in September and December just prior to his death; that the relationship between herself and father "was as a daughter and father should be; that she treated him just as well as she knew how; that he was sick during the time he was at her home, and that she waited on him and attended to his wants; that she gave him her room where the fire was and kept a fire for him all night and provided medicine for him."

She further testified:

"It was my desire to be present at the funeral services over my father's remains. I was grieved very much to know that I could not be at his funeral. After learning that I could not attend his funeral, I was grieved very much. I can't explain just how I did feel;

I have not in my possession any keepsake or relic of my father. I had written to him just before he died, a few days; I don't remember the date."

[1, 2] The question of damages for mental suffering is largely in the discretion of the jury. In such cases there is no fixed rule for measuring the damages to be allowed, and the jury being the exclusive judges of the facts, it must clearly appear that the amount awarded is excessive before an appellate court would be authorized to disturb the verdict upon an assignment of error urging that objection to it. So that applying this well-settled rule, we cannot say that the verdict is excessive, although it appears to us to be large. Western Union Tel. Co. v. McDavid, 121 S. W. 893; Western Union Tel. Co. v. Hill, 162 S. W. 382. In the last case cited the plaintiff's wife was ill, and, because of the delay in transmitting and delivering a telegram to him announcing her illness, plaintiff was prevented from reaching her bedside until she had become unconscious and unable to recognize and converse with him before she died, and a verdict for $1,500 was held not to be excessive. In the similar case of the Western Union Tel. Co. v. Piner, 9 Tex. Civ. App. 152, 29 S. W. 66, a verdict for $2,150 was allowed to stand.

The Supreme Court having held that appellant was not entitled to have the jury instructed as it requested in the special charge, for the refusal of which we reversed the judgment and remanded the case, and believing the other questions raised were correctly decided in our original opinion, the judgment of the district court is affirmed.

Affirmed.