# JULY, 1917

WESTERN UNION TELEGRAPH COMPANY v. T. C. BAILEY.

Application No. 9792.  Motion No. 3857.  Decided July 2, 1917.

**1.—Interstate Commerce—State Regulation.**

In the absence of regulation by Congress, a State may prescribe its own laws on subjects of interstate commerce, provided they do not constitute a direct burden thereon.  (P. 430.)

**2.—Telegraph—Place of Contract.**

While the measure of damages recoverable for breach of a contract to deliver an interstate message would be governed by the law of the place of the contract, this would be presumed to be similar to that of the place of performance and of the forum, in the absence of proof to the contrary.  (P. 430.)

**3.—Interstate Commerce—State Law.**

The enforcement in a State of the rule of law there prevailing which permits recovery for distress of mind by reason of negligence in that State in delivery of an interstate telegram, does not constitute a direct burden upon interstate commerce.  (Pp. 430, 431.)

**4.—Telegraph—Contract Limiting Recovery.**

A stipulation on the back of a telegraph message limiting to a stated sum the damages recoverable for the carrier's negligence in transmission and delivery between Tennessee and Texas, was void under the laws of both those States.  (P. 431.)

**5.—Telegraph—Interstate Commerce—Federal Regulation.**

The rules of a State governing damages recoverable for negligence there in the delivery of a telegraph message from another State are superseded by a Federal statute on the subject only when they present an absolute conflict with such statute, or when a purpose on the part of Congress to legislate on the particular subject is clearly revealed.  (P. 431.)

**6.—Same—Interstate Commerce Law.**

The amendment to the Interstate Commerce Law by the Act of Congress of June 18, 1910, (Supp., 1912; Fed. Stats., Ann., 112) requiring charges of telegraph companies to be just and reasonable, permitting them to classify messages and to charge different rates therefor, and giving the Interstate Commerce Commission power to determine and regulate the reasonableness of their charges, does not mention or deal with the liability of such companies for negligence. It does not supersede State laws on that subject, nor give the companies power

to make regulations limiting their liability for negligence and having the effect of law until declared unreasonable by the Commission.    (Pp. 431, 432.)

### 7.—Same.

It is not, it seems, the function of the Interstate Commerce Commission to promulgate rules of law on the subject of negligence by telegraph companies. That is the province of Congress.    (P. 433.)

### 8.—Same—Contract—Liability for Negligence.

In contracts by interstate carriers of goods controlled by the Interstate Commerce Law it is not permitted to the carrier to contract against liability for its negligence. And power to limit the damages recoverable rests on its giving the shipper choice of rates based on the extent of the liability assumed. Evidence here considered is held not to show any lower rate charged by reason of attempted limitation of damages recoverable.    (P. 433.)

### 9.—Same—Statutory Construction.

The fact that the Interstate Commerce Law prohibits contracts by carriers of property exempting them from liability for negligence, while no such regulation is made as to telegraph companies, is held to confirm the conclusion that, as to the latter, no legislation on the subject of their negligence was intended. (P. 433.)

Motion for rehearing of application for writ of error to the Court of Civil Appeals for the Sixth District, in an appeal from Bowie County.

Bailey sued the telegraph company and recovered. The company, appealing, on affirmance of the judgment applied for writ of error. This opinion was pronounced on applicant's motion for a rehearing on its application, which had been refused.

*Chas. S. Todd* (*Albert T. Benedict* and *George H. Fearons*, of counsel), for applicant.—Telegraphic communication between points in different States is interstate commerce. Pensacola Tel. Co. v. W. U. Tel. Co., 96 U. S., 1, 24 L. Ed., 708; W. U. Tel. Co. v. Texas, 105 U. S., 400, 26 L. Ed., 1067; W. U. Tel. Co. v. Pendleton, 122 U. S., 347, 30 L. Ed., 1187; W. U. Tel. Co. v. Alabama, 132 U. S., 473.

A State statute authorizing recovery of damages for mental anguish alone imposes a burden on commerce and is void as to interstate messages. W. U. Tel. Co. v. Brown, 234 U. S., 542, 58 L. Ed., 1457; W. U. Tel. Co. v. Compton (Ark.), 169 S. W., 946; W. U. Tel Co. v. Johnson (Ark.), 171 S. W., 859; W. U. Tel. Co. v. Simpson (Ark.), 174 S. W., 232; W. U. Tel. Co. v. Holden (Ark.), 174 S. W., 532.

A fortiori, a mere rule of decision, based on a construction of the common law different from and contrary to that of the Federal courts, permitting such recovery and imposing such burden on commerce, is equally void as to interstate commerce. All the Federal courts hold that mental anguish alone can constitute no cause of action for damages. W. U. Tel. Co. v. Brown, 234 U. S., 534; W. U. Tel. Co. v. Wood, 57 Fed., 471; Alexander v. W. U. Tel. Co., 126 Fed., 445; W. U. Tel. Co. v. Skean, 126 Fed., 295, 62 C. C. A., 281; Stansell v. W. U. Tel. Co., 107 Fed., 668; Gahan v. W. U. Tel. Co., 59 Fed., 443; Kester v. W. U. Tel. Co., 55 Fed., 603; Tyler v. W. U. Tel. Co., 54

Fed., 634; Crawford v. W. U. Tel. Co., 47 Fed., 544; Chase v. W. U. Tel. Co., 44 Fed., 554; W. U. Tel. Co. v. Bilisoly, 82 S. E., 91; 2 Joyce Elec. L., sec. 828, note 51, p. 1315.

The Congress of the United States has entered and completely covered the field of regulation of interstate communication by telegraph, including contracts for such interstate communication. Interstate Commerce Act as amended in 1906, and especially by Act of June 18, 1910; 3 Fed. Stat. Ann., pp. 808 et seq.; 10 Fed. Stat. Ann., pp. 170 et seq.; Fed. Stat. Ann. 1 Supp. (1912), pp. 111 et seq.

Congress having entered and covered this field, the laws of the United States and decisions of the Federal courts control exclusively and absolutely, regardless of State statutes or judicial decisions. Manchester v. Massachusetts, 139 U. S., 262; Texas & P. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S., 436; Southern Ry. Co. v. Reid, 222 U. S., 424; Chicago, R. I. & P. Ry. Co. v. Hardwick El. Co., 226 U. S., 426; New York C. Ry. Co. v. Hudson Co., 227 U. S., 248; St. Louis, I. M. & S. Ry. Co. v. Edwards, 227 U. S., 265; W. U. Tel. Co. v. Bilisoly, 82 S. E., 91; W. U. Tel. Co. v. Dant, 42 Ct. App. D. C., 398; W. U. Tel. Co. v. Hawkins, 73 So. 973; W. U. Tel. Co. v. Bank of Spencer, 156 Pac., 1175; Durre v. W. U. Tel. Co., 161 N. W., 755; Meadows v. Postal Tel. Cable Co. (N. C.), not yet reported; W. U. Tel. Co. v. Schade (Tenn.), not yet reported; Cultra v. W. U. Tel. Co., by Interstate Com. Com., not yet reported.

It is now well settled by the Federal decisions that in interstate commerce this identical contract is reasonable and valid. Adams Exp. Co. v. Croninger, 226 U. S., 491; Missouri, K. & T. Ry. Co. v. Harriman, 227 U. S., 657; Wells-Fargo Exp. Co. v. Neiman-Marcus Co., 227 U. S., 469; K. C. S. Ry. Co. v. Carl, 227 U. S., 630; Pacific Exp. Co. v. Ross, 154 S. W., 144; Missouri, K. & T. Ry. Co. v. Hailey, 156 S. W., 1119; Boston & M. R. Co. v. Hooker, 233 U. S., 97; G. N. Ry. Co. v. O'Connor, 232 U. S., 508; Pac. Exp. Co. v. Krower, 163 S. W., 19; Strauss G. L. Co. v. W. U. Tel. Co., — Pa. St., —; W. U. Tel. Co. v. Wisner, — Ohio App., —; W. U. Tel. Co. v. Bilisoly, 32 S. E., 91; Garrner v. W. U. Tel. Co., 231 Fed., 405.

*J. P. Mahaffey* was counsel for appellee Bailey in Court of Civil Appeals.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The material question presented by the case is, in substance, whether the legislation of Congress, subjecting telegraph companies engaged in interstate business to the Interstate Commerce Act for certain purposes, has the effect of superseding all State laws as to the damages recoverable for a negligent failure to deliver an interstate message, and as to the right of such a company to stipulate for exemption of liability for its own negligence. We reviewed the question fully upon the original presentation of the petition for writ of error, and have again con-

sidered it in response to an urgent motion for rehearing, in support of which a great many authorities have been cited.

The message in the case was one sent from a point in Tennessee to a point in Texas. It was addressed to the plaintiff and advised him of the serious illness of a brother who died the day following. Because of the negligence of the company occurring in Texas, it was never delivered to the plaintiff, who did not learn of his brother's illness and death until his receipt of a letter some days after his burial. Upon the trial, damages were awarded the plaintiff for the mental distress suffered by him in consequence of the negligent failure to deliver the message, in accordance with the established rule in this State upon that subject. The judgment was affirmed by the Court of Civil Appeals for the Sixth District. 184 S. W., 519. The opinion of that court upon a former appeal, where the question involved was discussed in an elaborate and able opinion by Mr. Justice Hodges, is to be found in 171 S. W., 839. On the back of the telegraph blank used for transcribing the message at the sending office was a stipulation to the effect that the company should in no event be liable for any damages for the non-delivery of the message, whether caused by the negligence of its servants or otherwise, beyond the sum of fifty dollars, at which amount, it was stated, the message was valued, in the absence of a statement thereon of a greater value when offered for transmission and the payment of, or an agreement to pay, an additional sum, based on such value, equal to one-tenth of one per cent thereof.

In the absence of legislation by Congress the right of a State to prescribe its own rules in respect to particular subjects of interstate commerce, which do not constitute a direct burden upon such commerce, is undoubted. Missouri, K. & T. Ry. Co. v. Harris, 234 U. S., 412; W. U. Tel. Co. v. Commercial Milling Co., 218 U. S., 406. While the measure of the damages recoverable for the breach of the contract for the non-delivery of the message in this case would be governed by the law of Tennessee, the place of the making of the contract, no evidence was adduced as to the law of that State upon the subject. It is therefore presumed to be similar to the law of this State. The correctness of the rule which in this State permits the recovery of damages for mental distress, and which allows such damages even in the instance of an interstate message where the negligence occurs in this State and such damages are recoverable under the law of the State from which the message is sent, furnishes no test of this immediate question. The real test of it is: Does the enforcement of such a rule constitute a direct burden upon interstate commerce? It can not be said to impose any such burden. It is no more of a burden upon such commerce than is a penalty prescribed by a State for misconduct of an interstate carrier occurring within its borders, the lawfulness of which, in the absence of legislation by Congress upon the particular subject, has in different instances been repeatedly affirmed by the Supreme Court of the United States. Western U. Tel. Co. v. James, 162 U. S., 650; New York,

N. H. & H. Ry. Co. v. New York, 165 U. S., 628; Gladson v. Minnesota, 166 U. S., 427; Pennsylvania R. Co. v. Hughes, 191 U. S., 477.

The stipulation upon the back of the message, amounting in its effect to an attempt to exempt the company from the consequences of its own negligence, was void under the law both of this State and the State of Tennessee. Western U. Tel. Co. v. Neill, 57 Texas, 283; Louisville & N. Ry. Co. v. Smith (Tenn.), 134 S. W., 866.

The legislation of Congress referred to is the amendment of June 18, 1910, to the Interstate Commerce Act. Supp., 1912, Fed. Stat. Ann., 112. If this amendment was an exertion by Congress of its authority over the subject of the liability of telegraph companies for the negligent non-delivery of interstate messages, including that of their right to provide by contract that they should be exempt from such liability, or if it clearly manifested a purpose on the part of Congress to extend its authority over those subjects, the rules of the State upon them are, of course, superseded. But we do not regard the amendment as open to any such construction. It is not necessary to here set it out, but its examination reveals that it classifies telegraph companies doing an interstate business as common carriers within the meaning of the Act; requires that their charges shall be just and reasonable; prohibits every unjust and unreasonable charge; permits their classification of messages and the charging of different rates therefor; and, further, in section 15 as amended, empowers the Interstate Commerce Commission to determine, after complaint made, whether their charges, regulations, or practices are unjust, unreasonable, discriminatory, or otherwise in violation of the Act, and, if it be of the opinion that they are, to prescribe those which are just, fair and reasonable. There is no mention of the liability of such companies for negligence. That subject is not dealt with or touched upon. If it had been the purpose of Congress to legislate upon it, we think it would have done so in terms clear and unmistakable. We are not required to assume that such was the intention in the absence of its clear manifestation. The laws of a State as they may be properly directed to the subjects of interstate commerce are not to be held as inconsistent with an Act of Congress unless they present an absolute conflict, or unless, at least, a purpose on the part of Congress to legislate upon the particular subject is clearly revealed. As was said in Missouri, K. & T. Ry. Co. v. Harris, 234 U. S., 419, "this rule rests upon fundamental grounds and should not be disregarded." It was furthermore affirmed in that case:

"It is, of course, settled that when Congress has exerted its paramount legislative authority over a particular subject of interstate commerce, State laws upon the same subject are superseded. Northern Pac. Ry. Co. v. Washington, 222 U. S., 370, 378; Erie Railroad Co. v. New York, decided May 25, 1914, 233 U. S., 671. But it is equally well settled that the mere creation of the Interstate Commerce Commission, and the grant to it of a measure of control over interstate commerce, does not of itself, and in the absence of specific action by the Com-

mission or by Congress itself, interfere with the authority of the States to establish regulations conducive to the welfare and convenience of their citizens, even though interstate commerce be thereby incidentally affected, so long as it be not directly burdened or interfered with. Missouri Pac. Ry. Co. v. Larabee Mills, 211 U. S., 612, 623; Southern Ry. Co. v. Reid, 222 U. S., 424, 437."

Quoting from other decisions of that court this is also said in that opinion:

"In Reid v. Colorado, 187 U. S., 137, 148, the court, speaking by Mr. Justice Harlan, said: 'It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police powers of the States, even when it may do so, unless its purpose ·to effect that result is clearly manifested. This court has said—and the principle has been often reaffirmed—that "In the application of this principle of supremacy of an Act of Congress in a case where the State law is but the exercise of a reserved power, the repugnance or conflict should be direct and positive, so that the two Acts could. not be reconciled or consistently stand together." Sinnot v. Davenport, 22 How., 227, 243.' In Savage v. Jones, 225 U. S., 501, 533, the court said: 'When the question is whether a Federal Act overrides a State law, the entire scheme of the statute must, of course, be considered and that which needs must be implied is of no less force than that which is expressed. If the purpose of the Act can not otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the State law must yield to the regulation of Congress within the sphere of its delegated power (citing cases). But the intent to supersede the exercise by the State of its police power as to matters not covered by the Federal legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulation and to occupy a limited field. In other words, such intent is not to be implied unless the Act of Congress fairly interpreted is in actual conflict with the law of the State.' "

The conferring of power, under the amendment of 1910, upon the Interstate Commerce Commission to pass upon the reasonableness of regulations of interstate telegraph companies, does not in our opinion amount to an affirmance by Congress that such companies may, through their own regulations, establish the measure of their liability for negligence, fixing conclusive rules upon the subject having all the force of positive law. Yet such would be the effect of a holding that because of the provisions of the amendment the stipulation referred to upon the message in this case must be allowed to absolutely control the company's liability here. It would certainly impute to Congress a lax regard for the public interest if it is to be said that it intended to leave these companies free to establish, through their own stipulations, the rules governing their public duties and obligations, making them competent, in a word, to declare the law of the land in respect to their liability for negligent failure to observe them.

To sustain the contention of the plaintiff in error as to the force of the stipulation referred to is but to hold that it has all the virtue of a law exempting it from liability for its own negligence except in an insignificant amount, at least until it is declared unreasonable by the Interstate Commerce Commission after complaint duly made. But we do not understand it to be the function of the Interstate Commerce Commission to promulgate rules of law upon this subject. It is the province of Congress to do that; and Congress only, in our opinion, is invested with Federal legislative power over the subject. The Supreme Court of the United States has never, to our knowledge, held by any authoritative expression that the Commission is so empowered, and we do not feel warranted in anticipating such a decision.

Even in cases admittedly controlled by the Federal law where it is held that an interstate carrier of property may by fair and reasonable agreement limit the amount recoverable to an agreed value, the agreement is not permitted to include exemption against the negligence of the carrier or its servants. The basis of the holding that such an agreement may be entered into is the advantage given the shipper in obtaining, as the consideration for the agreement, the lower of two or more rates proportionate to the amount of the risk. Adams Exp. Co. v. Croninger, 226 U. S., 491. But the present case rests in no such circumstances. There is nothing in this record to show that any rate lower than the ordinary rate for a message of its class was charged for transmitting the message.

The contrast between this legislation and that of Congress relating to the liability of interstate carriers of property very strongly indicates, we think, that the regulation of the liability for negligence of interstate telegraph companies was not in the mind of Congress. In the latter is found express and definite provision upon the subject, accompanied by the emphatic declaration that "no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed." These provisions of the Carmack amendment do not apply to telegraph companies, as held by the Interstate Commerce Commission itself.

That they do not apply to such companies, and that without some similar legislation this class of common carriers is left without any Federal regulation of their liability for the consequences of their negligence, convinces us that Congress did not intend that the amendment of 1910 should embrace the subject.

We therefore adhere to our decision denying the writ of error, and the motion for rehearing is overruled.