DES ARC OIL MILL `v`. WESTERN UNION TELEGRAPH COMPANY.

Opinion delivered January 28, 1918.

1. TELEGRAPH COMPANIES—NEGLIGENT SENDING OF MESSAGE—DUTY OF SENDER TO MINIMIZE DAMAGES.—It is the duty of one suffering damage by reason of the negligence of a telegraph company to adopt every available method of minimizing the damage, yet this rule does not require the sender to break his own contract in order to protect the telegraph company from the consequences of the negligence of its own servants.

2. CONTRACT—CONTRACT MADE BY TELEGRAPH—RESPONSIBILITY OF SENDER WHO IS THE OFFERER.—A party making an offer by telegraph is responsible for the correct transmission of his message and is bound by it in the terms in which it is delivered to the party addressed.

3. CONTRACTS—CONTRACT BY TELEGRAPH—TELEGRAPH COMPANY IS AGENT FOR WHOM—BOTH SENDER AND SENDEE MAY SUE FOR DAMAGES.—As between the sender and the sendee the telegraph company is the agent of the former, who is bound by any mistake made in the transmission of a message, though the sendee may, under proper circumstances, maintain an action against the telegraph company for damages resulting in violation of the public duty, which it owes as a carrier, to the sendee as well as to the sender.

4. CARRIERS—CONTRACT EXEMPTING FROM LIABILITY—TELEGRAPH COMPANY.—A public carrier's contract exempting itself from liability for negligence of its own servants is void. A stipulation in the contract of a telegraph company that it will not be liable for damages resulting from the incorrect transmission of an unrepeated message is void.

5. TELEGRAPH COMPANIES—SENDING MESSAGE—STIPULATION AGAINST LIABILITY FOR NEGLIGENCE—INTERSTATE COMMERCE.—It is no interference with interstate commerce for the courts of this State to declare the law, that a stipulation by a public carrier, attempting to exempt itself from liability for negligence, is void.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks*, Judge; reversed.

*Richard M. Mann,* for appellant.

1.   The appellee is liable on the first cause of action for its negligence.   It introduced no testimony whatever, nor did it introduce any provision limiting its liability, nor any testimony that it had filed with the Interstate Commerce Commission any rules or regulations limiting its liability.   This was an essential showing as a defense. 223 U. S. 573; 191 S. W. 817.   If a provision limiting liability had been shown it was not valid nor binding. 38 U. S. Stat. L. 1196, Fed. Stat. Ann. Suppl. 1916, p. 124; 196 S. W. 516; 191 *Id.* 817.

2.   It was liable for negligently and falsely assuring appellant that the message was correctly delivered, on which assurance appellant relied to its damage.   103 Ark. 79; 25 *Id.* 219; 37 *Id.* 47; 29 *Id.* 512; 16 Cyc. 1003; 25 *Id.* 425, note 526; 111 N. W. 1; 8 L. R. A. (N. S.) 485; 50 L. R. A. 160; 75 Ark. 596; 17 Fed. 495; 117 Iowa 180; 90 N. W. 616; 62 L. R. A. 617.

3.   The telegraph company was the agent of the sender and bound to correctly transmit the message.   9 Cyc. 294.   See also 153 N. W. 375; 84 Ark. 457; 92 *Id.* 133; 73 *Id.* 205; 89 *Id.* 368.

*Albert T. Benedict* and *Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellee.

1.   The instruction is sustained by the conditions of the telegram.   154 U. S. 1.

2.   The conditions limiting liability are authorized by the Interstate Commerce Act.   36 Stat. L. 539; 231 Fed. 405; 165 Pac. 1175; 89 S. E. 106; L. R. A. 1915 B. 685; 203 Fed. 140.

3.   If plaintiff sustained a loss, it alone was   to blame. 1 Sedgwick on Dam., § 201 *et seq.;* 57 Ark. 257; 264; 73 *Id.* 205; 118 *Id.* 113; 62 S. W. 119; 86 S. E. 631; 141 Pac. 585; 160 S. W. 991; 141 Pac. 586.

4.   There was no later contract between the parties. 154 W. S. 128.   The conditions were part of the contract and put plaintiff on notice.   Plaintiff could have sold without loss.   The undertaking of the agents of defend-

ant was wholly without consideration. The company is a public servant and required to conduct its business under the rules of the Interstate Commerce Commission and no discrimination nor guarantee could be allowed.

McCULLOCH, C. J. This is an action instituted by appellant against appellee telegraph company to recover damages for alleged negligence of appellee's servants in failing to correctly transmit and deliver a telegraphic message. Appellee did not introduce any testimony concerning the transaction and appellant's testimony is undisputed. The trial court decided that no liability on the part of the telegraph company was shown and gave a peremptory instruction to the jury to return a verdict in appellee's favor.

Appellant operated an oil mill in Arkansas and maintained an office in the city of Little Rock. On October 27, 1916, appellant held an option from another mill concern at Searcy, Arkansas, for the purchase of 1,000 tons of cotton seed, and on that day sent a code message by telegraph to the East St. Louis Cotton Oil Company of East St. Louis, Illinois, offering to sell 850 tons of seed at the price of $64.00 per ton, the word ''completingly'' being used in the code to indicate those figures. In the transmission of the message the word ''completely'' was used by the operator, which, according to the interpretation of the code, indicated the price of $63.00 per ton for the seed, and the message was delivered to the sendee in that form. Immediately upon the receipt of the message the manager of the East St. Louis mill called up appellant's agents at Little Rock by telephone and accepted the offer without either of the parties restating the price, appellant's agent understanding at the time that his message had been correctly transmitted indicating the price of $64.00 per ton, and the manager of the other concern supposing at the time that he received the message correctly and that the price was $63.00 per ton as indicated by the code word used in the message. There was a custom among dealers in the commodity mentioned to confirm

trades made over the telephone, by telegram or letter, and so, within an hour after the telephone conversation, the manager of the East St. Louis mill sent to appellant's manager a telegram confirming the acceptance of the order at $63.00 per ton. As soon as appellant's manager observed this discrepancy between the offer and that contained in the acceptance he instituted an inquiry with the telegraph company and after due investigation by the operator the manager reported to appellant's manager that the message had been correctly transmitted and delivered as written. Resting upon this assurance appellant's manager insisted upon the purchaser taking the seed at the price contained in the offer, but when he ascertained finally that the message had been incorrectly transmitted and that in the form delivered to the purchaser the price was indicated at $63.00 per ton he yielded to the contention of the purchaser and delivered the seed at that price. The difference of $1.00 per ton is claimed as damages resulting from the incorrect transmission of the message. Cotton seed was worth in the market the full price stated in appellant's offer for several days after the offer was made, but subsequently declined in price. Immediately after the telephone message between appellant's manager and the East St. Louis purchaser appellant closed the option with the Searcy mill for the purchase of 1,000 tons of seed. The evidence shows that, although the telegraphic message sent by appellant was in code language and unintelligible to those who were not familiar with the code, appellant's manager informed the operator of the contents and importance of the message.

(1-3) The first contention of learned counsel for appellee in support of the court's peremptory charge to the jury is that the damage to appellant was avoidable in that its manager was apprised of a mistake in the transmission of the message in time to have sold the cotton seed at the full price named therein and appellant should have broken its contract with the purchaser and sold the seed for the best obtainable price which was sufficient to

cover the damages resulting from the breach of the contract. This reasoning is, we think, entirely unsound. While we have announced the rule in this class of cases that it is the duty of one suffering damage by reason of the negligence of a telegraph company to adopt every available method of minimizing the damage (*Western Union Tel. Co.* v. *Crain*, 118 Ark. 13), yet this rule does not require a party to break his own contract in order to protect the telegraph company from the consequences of the negligence of its own servants. The rule stated does not go that far. It is conceded that the servants of the telegraph company were guilty of negligence and that as a result of that negligence a valid contract was imposed on appellant to sell the seed at a lower price than was proposed in the message as written and delivered to the agent of the telegraph company for transmission. The authorities announce the rule that "a party making an offer by telegraph is responsible for the correct transmission of his message and is bound by it in the terms in which it is delivered to the party addressed." This is on the theory that the carrier of the message is the agent of the sender. 9 Cyc., p. 294; *Ayer* v. *Telegraph Co.,* 79 Me. 493; *West. Union Telegraph Co.* v. *Shotter,* 71 Ga. 760; *Durkee* v. *Vermont Central Rd. Co.,* 29 Vt. 127; *Saveland* v. *Green,* 40 Wis. 431; *New York & W. P. Telegraph Co.* v. *Dryburg,* 35 Pa. St. 298; *Sherrerd* v. *Telegraph Co.,* 146 Wis. 197; *Younger* v. *Telegraph Co.,* 146 Iowa 499; *Eureka Cotton Mills* v. *Telegraph Co.,* 88 S. C. 498. There are decisions to the contrary. *McKee* v. *Telegraph Co.,* 158 Ky. 143, 51 L. R. A. (N. S.) 439; *Shingleur* v. *Telegraph Co.,* 72 Miss. 1030; *Pepper* v. *Telegraph Co.,* 87 Tenn. 554. The true rule is, we think, that announced in the majority of the cases that as between the sender and sendee the telegraph company is the agent of the former who is bound by any mistake made in transmission of a message, though the sendee may, under proper circumstances, maintain an action against the telegraph company for damages resulting in

violation of the public duty, which it owes as a carrier to the sendee as well as to the sender.

The offer contained in the telegram was accepted by the purchaser in a telephone message and later was confirmed in a telgraph message sent in accordance with the custom of that trade. The message was strictly one in confirmation of the acceptance of the price contained in appellant's offer and was not a counter-proposition for purchase at a different price.

It is next contended that there was no liability because the printed telegraph blank contained stipulations exempting the company from liability. Those stipulations read as follows:

"To guard against mistakes or delays, the sender of a telegram should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated telegram rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated telegram and paid for as such, in consideration whereof it is agreed between the sender of the telegram and this company as follows:

1. The company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated telegram, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for nondelivery of any repeated telegram, beyond fifty times the sum received for sending same, unless specially valued; nor in any case for delays arising from unavoidable interruptions in the working of its lines; nor for errors in cipher or obscure telegrams.

2. In any event the company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for the nondelivery, of this telegram, whether caused by the negligence of its servants or otherwise, beyond the sum of fifty dollars, at which amount this telegram is hereby valued, unless a greater value is stated in writing hereon at the time the telegram is offered to the company for transmission, at an additional

sum paid or agreed to be paid based on such value equal to one-tenth of one per cent. thereof.''

(4) The stipulation in question constitutes an attempt on the part of the telegraph company to exempt itself from liability for damages resulting from the negligence of its own servants. According to the very great weight of authority such a provision in the contract of a public carrier is void, and this is true as to the particular stipulation before us concerning repeated and unrepeated messages. Jones on Telegraph & Telephone Companies, § 377. It was so held in the case of *Western Union Telegraph Co.* v. *Short,* 53 Ark. 434, and the same rule was announced in the case of *Western Union Telegraph Co.* v. *Compton,* 114 Ark. 193, except that the stipulation dealt with in that case was not the one concerning unrepeated messages. The syllabus in that case erroneously states the contrary rule, but the opinion shows clearly the holding of the court following the rule announced in the Short case, *supra,* that such stipulation is void. We granted a rehearing in the Compton case on the ground that the Supreme Court of the United States had decided that the imposition by the State statute of liability for mental anguish was an interference with interstate commerce. *Western Union Tel. Co.* v. *Brown,* 234 U. S. 542. The effect of the original opinion that the contract for exemption from liability for negligence is void was not modified in the opinion on rehearing. We allowed the judgment to stand for the sum of $50, the sum named in the stipulation merely for the reason that that was the extent of defendant's defense as it had offered in the pleadings to pay damages in that sum. The opinion on rehearing did not deal with the question of exemption from negligence, but was based entirely upon the decision of the Supreme Court of the United States that the State statute was inapplicable to an interstate message. The effect of the Compton case has been misinterpreted in other quarters. *Gardner* v. *West. Union Tel. Co.,* 231 Fed. 405; *West. Union Tel. Co.* v. *Bailey,* 184 S. W. 519; *West. Union Tel. Co.* v. *Bailey,* 196 S. W. 516; *West. Union Tel. Co.* v. *Bank*

*of Spencer,* 156 Pac. (Okla.) 1175.   But an examination of the opinion shows clearly that the court meant to array itself, as it had already done, with those courts that had steadily adhered to the rule that a public carrier's contract exempting itself from liability for negligence of its own servants is void.   Other cases decided later by this court merely followed the Compton case in yielding to what we conceived to be the ruling of the Supreme Court of the United States in the case of *Western Union Tel. Co.* v. *Brown, supra.   Western Union Tel. Co.* v. *Holder,* 117 Ark. 210; *Western Union Tel. Co.* v. *Johnson,* 115 Ark. 564.

There are certain expressions in the opinion in the Holder case, *supra,* which might be interpreted to mean that this court intended to recede from its position on the question of invalidity of a contract exempting a carrier from liability for negligence, but the language must be read in the light of the particular question under consideration, and when so understood it is clear that we only meant to yield to the superior authority of the Supreme Court of the United States in holding that the statute imposing liability for mental anguish is a burden on interstate commerce.

(5)   Is such a stipulation rendered valid by the statute enacted by Congress in the year 1910 (act of June 18, 1910, 36 Stat. L. 544, Fed. Stat. Ann. Supp. 1912, vol. 1, p. 112), giving the Interstate Commerce Commission authority to regulate rates and practices of telegraph companies?   We discover no good reason for holding that such a contract, if void under the general principles of the common law prior to the enactment of that statute, has become valid under the statute.   The controlling clause of the statute in question reads as follows:

"All charges made for any service rendered or to be rendered in the transportation of passengers or property or for the transmission of messages by telegraph, telephone or cable, as aforesaid, or in connection therewith, shall be just and reasonable; and every unjust and unreasonable charge for such service or any part thereof is

prohibited and declared to be unlawful; provided, that messages by telegraph, telephone or cable, subject to the provisions of this act, may be classified into day, night, repeated, unrepeated, letter, commercial, press, government, and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages."

It was clearly the intention of Congress in enacting this statute to confer authority on the commission merely to regulate rates and classifications of messages; and not to confer authority to declare the principles of law affecting the liability of a carrier for its wrongful acts or omissions. *Western Union Tel. Co.* v. *Bailey, supra.* The classification of repeated and unrepeated messages and the fixing of rates for the different classes of messages is quite a different thing from a contract absolving the carrier from liability for its own negligence. If it had been intended to confer power upon the Interstate Commerce Commission to change the law in that respect by the mere approval of classification of rates, doubtless the framers of the statute would have used different language. The Supreme Court of the United States has given a very clear intimation that no such power is conferred by the various statutes with reference to the regulation of interstate rates by the commission. In *Adams Express Co.* v. *Croninger,* 226 U. S. 491, the court said:

"That a common carrier can not exempt himself from liability for his own negligence or that of his servants is elementary. *York Mfg. Co.* v. *Illinois Central Rd. Co.,* 3 Wall. 107; *Railroad Co.* v. *Lockwood,* 17 Wall. 357; *Bank of Kentucky* v. *Adams Express Co.,* 93 U. S. 174; *Hart* v. *Pennsylvania Railroad,* 112 U. S. 331, 338. The rule of the common law did not limit his liability to loss and damage due to his own negligence, or that of his servants. That rule went beyond this, and he was liable for any loss or damage which resulted from human agency, or any cause not the act of God or the public enemy. But the rigor of this liability might be modified through any fair, reasonable and just agreement with the shipper

which did not include exemption against the negligence of the carrier or his servants. The inherent right to receive a compensation commensurate with the risk involved the right to protect himself from fraud and imposition by reasonable rules and regulations, and the right to agree upon a rate proportionate to the value of the property transported.''

Similar language was used by the same court in the later case of *Kansas City Southern Ry. Co.* v. *Carl*, 227 U. S. 639, which was a case which went up on a writ of error from this court. 91 Ark. 97. In that case the court said: ''Is the contract here involved one for exemption from liability for negligence and therefore forbidden? An agreement to release such a carrier for part of a loss due to negligence is no more valid than one whereby there is complete exemption. Neither is such a contract any more valid because it rests upon a consideration than if it was without consideration.'' In each of those cases, however, the court upheld the stipulation as a special contract as to the value of the commodity shipped. The stipulation with respect to the telegraph message can not be sustained as a stipulation for value because in the very nature of the case a telegram or the damages which may flow from its breach can not be estimated in advance. *Western Union Tel. Co.* v. *Compton, supra.* Nor can adherence to the common law principle which invalidated such a stipulation be viewed as a burden upon or interference with interstate commerce, or as being in conflict with the authority of the Interstate Commerce Commission over that subject, for, as before stated, the exemption does not come within the scope of the regulation of rates or of classification of messages, but is purely an attempt to contract against the general law of the land with respect to liability for negligence.

Learned counsel for appellee press upon our attention the recent case of *Gardner* v. *Western Union Tel. Co.*, 231 Fed. 405, decided by the United States Circuit Court of Appeals for the Eighth Circuit, as sustaining their contention that, such a stipulation is rendered valid by the

act of Congress assuming jurisdiction over the regulation of telegraph companies. We do not think that the decision in that case has any such bearing on the present case. That decision dealt entirely with the stipulation providing that there should be no liability unless notice should be given within sixty days—a provision the validity of which has been frequently upheld by this court, and is valid according to the weight of authority. A clause in the Oklahoma constitution attempted to render void such a provision in any contract or agreement, and the question before the court in that case was whether or not the provision of the Oklahoma constitution in its application to an interstate carrier was an attempted interference with interstate commerce, and the Court of Appeals held that it was. We fail to see the application of that decision to the question now before us. Many other cases cited on the brief of counsel held, as we did, that the right to recover mental anguish under local statutes and decisions has been abrogated by the assumption of power by Congress over the subject of interstate carriers of messages. The only decision by a court of last resort brought to our attention holding that the Interstate Commerce Commission has, under the Federal statute, the power to approve and legalize a regulation exempting a telegraph company from its own negligence is the case of *Haskell Implement & Seed Co.* v. *Postal Telegraph Co.,* 114 Me. 277, 96 Atl. 219. Some of the decisions cited seem to confuse this question with the right to recover mental anguish under local statutes, but the two questions are different, as we have attempted to show. At any rate, we are convinced that it is no interference with interstate commerce for the courts of this State to adhere to its former decisions in declaring the general law on the subject that a stipulation of a public carrier attempting to exempt itself from liability for negligence is void. That conclusion is in entire accord with the views expressed in our former decisions, and we now adhere to them.

It follows, therefore, that the circuit court erred in holding the stipulation to be valid and in giving a per-

emptory instruction to the jury in appellee's favor. Reversed and remanded for a new trial.

SMITH, J., (dissenting). No useful purpose would be served by reviewing the cases cited in the majority opinion, or the briefs of counsel, and this dissent is written chiefly to express my regret that I can not assent to the view of the majority.

The stipulations printed on the back of the telegraph blank are set out in the majority opinion; and in the briefs it is said that these stipulations have been in use, with only inconsequential changes, since telegraphy, as an aid to commerce, was in its infancy. From the beginning courts have differed as to the validity of these stipulations. They were upheld by the Supreme Court of the United States in the case of *Primrose* v. *Western Union Telegraph Co.*, 154 U. S. 1, and a number of courts concurred in that view. But this court, with others, and, perhaps, the larger number, took the opposite view. In the case of *Western Union Telegraph Co.* v. *Short*, 53 Ark. 434, this court refused to give effect to the limitations of liability there contained, upon the ground that they were stipulations for immunity from liability for negligence in the transmission of a message—an unrepeated message there, as here. The majority now assign here the same reason which was assigned there for refusing to give effect to the stipulations above referred to.

But the perspective has changed since the decision of this court in the Short case, *supra.* Since the passage of the act of Congress of June 18, 1910, referred to in the majority opinion, telegraph companies are given the right to classify their messages and to make a charge dependent upon the classification to which the message belongs. The subject is one of which the Federal Government has exclusive control, when it elects to exercise that control, and we can not refuse to give effect to any classification approved by the Interstate Commerce Commission—the agency constituted by Congress to pass upon the classification of messages—by saying that a classification which has been approved is void as a contract against liability

for negligence.   The power of review is, in the last analysis, the power of control, and, if we are to give effect only to such regulations or classifications as meet our approval, then we—ourselves—and not the Interstate Commerce Commission, have the right of approval, and it can not be material upon what ground we give or withhold our approval.   Other courts would have an equal right to approve or disapprove, and the same contrariety of views would, no doubt, then be found as did in fact exist before Congress delegated to the Interstate Commerce Commission the duty of classifying messages.   There can be no doubt but that the desire for uniformity was one of the controlling purposes moving Congress to take control of interstate telegraph and telephone messages and in delegating to an agency already existing, and which had been created for the purpose of regulating other forms of commerce between the States, the right to approve the classification of such messages.   This purpose of uniformity is at once defeated if the courts of the various States may decide which, if any, of such regulations shall be enforced when they are called upon to enforce them.

A case which appears to me to be decisive of the point at issue is that of *Cultra* v. *Western Union Telegraph Co.*  This case is reported in volume 44 of the Reports of the Interstate Commerce Commission at page 670.   It was submitted to the commission on April 12, 1917, and decided on May 17, 1917.   That case originated in the circuit court of Jackson County in the State of Missouri, and was brought to recover damages sustained through the erroneous transmission of an unrepeated message.   The case is not distinguishable from the case at bar on the facts.   The opinion of the commission reflects the fact that the trial court held the case in abeyance pending a ruling by the commission upon the validity of the stipulations above referred to; and the opinion also reflects the fact that the commission treated the case as one of first impression with it and as one of the highest importance.   The opinion puts the question at rest, insofar

as it is in the power of the commission to do, and concludes with the following statement:

"Our conclusion upon the record is that the Congress, by the language used in the amendatory act of 1910, has manifested a definite intention to place under the jurisdiction and control of this commission the rates and practices of interstate telegraph companies, as well as the rules, regulations, conditions and restrictions affecting their interstate rates; that the rate voluntarily used by the senders of the message in question was an unrepeated rate to which was lawfully attached, as a fundamental feature of it, the restricted liability insisted upon here by the defendant; that the Congress has expressly authorized such rates with a restricted liability attached; that such rates are not therefore contrary to public policy, but on the contrary are binding upon all until lawfully changed; and that neither the interstate rates of the defendant nor the rules, practices, conditions and restrictions affecting those rates have been shown in this proceeding to be unreasonable or otherwise unlawful. The complaint must therefore be dismissed, and it will be so ordered."

The facts of the instant case may be summarized as follows: Appellant was offered the choice of three classifications under which to send its message, and the choice made governed both the rate to be charged for the service and the liability of the telegraph company for mistakes or delays in the transmission or delivery of the message. Both the charge to the sender and the liability of the company depended upon the classification selected by the sender for this message, and it was the sender's right and privilege to select the classification to which its message should be assigned. The message could have been sent as a repeated one, or as an unrepeated message, or it could have been sent as a valued message by paying one-tenth of one per cent. of the value assigned.

In the opinion of the Interstate Commerce Commission cited it is stated that the basis of any charge made by the telegraph company is that of an unrepeated message.

and it is pointed out that the right to classify messages and to base the charge upon the classification made is wholly nullified, if the rate charged and collected for an unrepeated message carries with it the same protection to the sender, or recipient, and imposes upon the telegraph company the same liability and degree of care as a repeated or a valued message. No one would pay the higher rate, if he were entitled to the same service at the lower rate.

So that, whatever we may think of the merit of the classifications, or of the possible results from their approval, by the Interstate Commerce Commission, it is our duty to give effect to the ruling of that commission, and it is likewise our duty to give effect to the numerous recent decisions of the Supreme Court of the United States, which hold that carriers may graduate their charges according to the value of the service performed. The doctrine of those cases is applicable here.

In my view, therefore, the appellant should have judgment for the sum tendered by the telegraph company, which sum is based upon liability for the negligent transmission of an unrepeated message.

I am authorized to say that Mr. Justice WOOD concurs in the views here expressed.