WESTERN UNION TELEGRAPH COMPANY *v.* OSBORN.

## Opinion delivered October 7, 1918.

1. COMMERCE—CONTRACT WITH TELEGRAPH COMPANY.—Where appellant telegraph company made a contract in Arkansas with appellee to furnish him the daily cotton market reports, based upon the market reports of the New York Cotton Exchange, the contract was not an interstate one.

2. DAMAGES—DUTY TO MINIMIZE.—While it was the duty of one suffering damage by the negligence of a telegraph company to minimize his damages, he is not required to break his verbal and unenforcible contract in order to protect the telegraph company from the consequences of the negligence of its own servants.

3. TELEGRAPHS AND TELEPHONES—MISTAKE IN DELIVERING MESSAGE—DAMAGES.—Where, in reliance upon an erroneous market report furnished to him by defendant, plaintiff purchased 40 bales of cotton, paying therefor one cent a pound more than the market price, the court properly charged the jury that if they found for plaintiff the measure of his damages would be such a sum as they might find from the evidence to be the difference, if any, between the price which the plaintiff paid for the cotton and what plaintiff would have paid for the cotton if he had been furnished a correct market report by the defendant.

4. SAME—DAMAGES FOR MISTAKE IN MESSAGE.—Where, relying upon a market report furnished by defendant, plaintiff purchased 40 bales of cotton at a higher price than he would have paid if the report had been correct, he is entitled to recover the difference between the price paid and the price he would have paid if the market report had been correct, even though he might have sold the cotton without a loss.

Appeal from Craighead Circuit Court, Jonesboro District; *R. H. Dudley,* Judge; affirmed.

*Albert T. Benedict* and *Rose, Hemingway, Cantrell Loughborough & Miles,* for appellant.

1. Plaintiff could only recover for loss actually suffered and not for loss of expected profits. 1 Suth. on Dam. 17, 18; 1 Sedgwick on Dam., § 30; 13 Cyc. 22; 53 Ark. 434, 443; 54 *Id.* 22; 74 *Id.* 358, 360. See also 86 Ark. 276; 59 S. W. 918; 83 *Id.* 364; 84 N. W. 1038; 41 Ia. 458.

2. The court erred in permitting the plaintiff to state what he could have sold the cotton for if the New

York market had been as shown in the report delivered to him. His statement is purely speculative.

3. The court erred in its instructions. The correct rule is not stated and the verdict is not supported by the evidence.

4. The contract was an interstate one.

*Basil Baker* and *Horace Sloan,* for appellee.

1. Telegraph companies are liable for losses occasioned by their errors or mistakes. 37 Cyc. 1699.

2. This was not an interstate contract.

3. The deal with Denton Bros. was closed before the error was discovered.

4. The contract was not voidable under the statute of frauds. 29 A. & E. Enc. Law (2 ed.), 811, 810; 9 A. & E. Enc. Pr. & Pl. 703.

5. The bill of exceptions is incomplete.

6. The court in its instructions properly stated the rule as to the measure of damages. 41 Ia. 458; 114 S. W. 686; 73 Ark. 205. Loss of profits is recoverable as damages. Ann. Cas. 1914, 1297.

HART, J. This is an appeal from a judgment rendered in favor of P. S. Osborn against the Western Union Telegraph Company for damages claimed to have resulted from an error in a report of the cotton market made by the telegraph company to him. In September, 1916, P. S. Osborn entered into a written contract with the Western Union Telegraph Company to furnish him the market reports of the New York Cotton Exchange at stated intervals each day for a certain stipulated price. Osborn was engaged in business at Jonesboro during that fall as a cotton buyer. He bought cotton, not only in the city of Jonesboro, but in many towns adjacent thereto. The service reports of the New York future market was practically all that the buyers in his section of the State knew anything about. The price paid for cotton each day was based on the report of transactions on the New York Cotton Exchange telegraphed throughout the country. The telegraph company was engaged in the business

of collecting these market reports and furnishing them to their customers. The contract in question was dated September 9, 1916, at Jonesboro, Arkansas. On November 27, 1916, during the life of the contract the telegraph company made a mistake in furnishing Osborn with the reports of the cotton market. The reports furnished him showed the price of cotton to be one cent higher than the real market price. On the same day Osborn purchased forty bales of cotton from Denton Bros. at Grubbs, Arkansas. He agreed to pay them twenty-one and some odd fraction of a cent per pound for the cotton, based on the report of the cotton exchange furnished him by the telegraph company. The real market price on the cotton was twenty and some odd fraction of a cent on that day. The total weight of the forty bales of cotton purchased by Osborn from Denton Bros. was 19,225 pounds. Osborn found out about the mistake of the telegraph company in furnishing him the cotton reports on the same day it was made, but it was after the purchase by telephone of the forty bales of cotton from Denton Bros. had been made.

It is first insisted that the contract in question was an interstate one. In this contention we can not agree with counsel for the defendant. The telegraph company undertook to collect and furnish daily market reports of cotton from the New York Cotton Exchange. Osborn had nothing to do with the collection of the reports or their transmission. His contract was in writing, and was made with the telegraph company in the city of Jonesboro, Arkansas, and the reports were to be collected by the company and delivered to him in that city. There was no privity of contract whatever between him and the New York Cotton Exchange. His contract was with the telegraph company, and was made and was to be performed in the State of Arkansas. Osborn made a contract with it to furnish him daily market reports of the price of cotton. It is true these reports were based on the price of cotton in the city of New York, but Osborn was not interested in the manner or means used by the

company in securing the information.   Hence the trans-action was not an interstate one.

It is next contended that Osborn can not recover be-cause he learned of the mistake of the telegraph company in furnishing the market reports to him on the same day and in time to have avoided his contract with the Denton Brothers for the forty bales of cotton.   It is true that at this time Osborn's contract with the Denton Brothers was a verbal one and was not enforceable by them. While it was his duty to minimize his damages, this rule did not require him to break his own contract in order to protect the telegraph company from the consequences of the negligence of its own servants.   *Des Arc Oil Mill* v. *Western Union Tel Co.*, 132 Ark. 335.

Counsel on both sides have devoted a portion of their briefs to the question of the right of the plaintiff to re-cover profits in this action.   We do not think that ques-tion is an issue in the case.   The foundation of the plain-tiff's cause of action is that he purchased forty bales of cotton on the basis of the market report erroneously fur-nished him by the defendant, to his loss and damage.   The court properly instructed the jury that, if it found for the plaintiff, the measure of damages would be such a sum as it might find from the evidence to be the difference, if any, between the price which the plaintiff paid for the cotton and what plaintiff would have paid for the cotton if he had been furnished a correct market report by the defendant.   It is true that Jonesboro is situated in a sec-tion of the State where much cotton was grown, and was the market place for all the nearby towns, but the plain-tiff did not, so far as the record shows, attempt to buy any cotton except the forty bales from Denton Brothers. His cause of action is based solely on that transaction, and he alleges that he suffered a loss on it on account of the negligence of the defendant in furnishing him with the market reports of the price of cotton for that day.

It is next insisted by counsel for the defendant that the verdict is not sustained by the evidence in the record. They claim that, inasmuch as there is nothing to show that

the cotton could not have been sold for more than was paid for it, and that if so all loss was avoidable; and consequently there could be no recovery. We do not think this question has anything at all to do with the case. The plaintiff was in the business of buying cotton and selling it again at a profit. The defendant knew this fact, and made a contract with him to furnish him the market reports daily, knowing that these would be used by him as a basis for buying cotton. Relying upon the reports furnished to him by the defendant, the plaintiff bought forty bales of cotton paying therefor one cent per pound more than the market price. No matter at what advance price he might have sold the cotton, it is manifest that he lost the sum paid by him above the market price. It can not be said that Denton Brothers would not have sold the cotton had they known the price to be less than it really was, for the evidence shows that cotton was bought and sold in the market at Jonesboro and the surrounding towns on a price based on the daily market reports received from the cotton exchange in New York. Hence it is fairly inferable from the evidence in the record that Denton Brothers would have sold the cotton to the plaintiff at the market price. As above stated, the question of the loss of profits or gains prevented does not enter into the case. The plaintiff sued to recover an amount of money actually lost by him on account of the negligence of the defendant, and this loss he actually suffered, regardless of the price for which he might sell the cotton.

It follows that the judgment must be affirmed.