WESTERN UNION TELEGRAPH CO. v. CHIHUAHUA EXCHANGE. (No. 870.)

(Court of Civil Appeals of Texas. El Paso. Oct. 24, 1918. Rehearing Denied Nov. 14, 1918.)

1. TELEGRAPHS AND TELEPHONES ☞39—ERROR IN TRANSMISSION—RIGHT OF RECOVERY —APPROXIMATE QUOTATION.

Even if plaintiff's telegram was merely an approximate quotation of price, this is immaterial as regards plaintiff's right to recovery of telegraph company for transmitting a lower price, sendee ordering plaintiff to buy, and he doing so at market price, resulting in a complete and fully executed contract.

2. PRINCIPAL AND AGENT ☞60—EXCEEDING AUTHORITY—LIABILITY.

An agent, with limited authority to buy at a certain price, paying more, is liable to the principal for the excess expended.

3. TELEGRAPHS AND TELEPHONES ☞56(2)—MISTAKE IN TRANSMISSION — RIGHT OF SENDER.

One who telegraphs quotation of price to another, with whom he had previously corresponded by mail, makes the telegraph company his agent, and so must settle with the sendee on the price erroneously transmitted, accepted by sendee, and can recover the loss of the company.

4. COURTS ☞91(1)—CONTROLLING DECISION —STATE SUPREME COURT.

Decision of Texas Supreme Court on invalidity of provisions on back of interstate telegram limiting liability for error in transmission is controlling on Court of Civil Appeals.

Appeal from El Paso County Court; W. P. Brady, Judge.

Action by the Chihuahua Exchange against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Albert T. Benedict, of New York City, and Beall, Kemp & Nagle and Harold Potash, all of El Paso, for appellant. R. B. Redic, of El Paso, for appellee.

Statement of Case.

HIGGINS, J. This was a suit by Miguel Gutierrez to recover damages alleged to have been sustained by reason of an error committed by appellant in the transmission of a telegraphic message. Gutierrez was engaged in the business of buying and selling Carranza currency in the city of El Paso, Tex., under the name of Chihuahua Exchange. A. N. Medillin, of Mesilla Park, N. M., had on deposit with Gutierrez in excess of $1,071.13 in United States money for the purpose of buying Carranza money for Medillin when instructed by the latter so to

do. In response to letters received by plaintiff from Medillin, the contents of which are not disclosed by the evidence, plaintiff delivered to defendant at El Paso a telegram in Spanish directed to Medillin at Mesilla Park. Translated, the message reads:

"According to letters received, hard to buy now at less than two seventy five, waiting two or three days, it may go lower, advise us."

The message was promptly transmitted and delivered to Medillin, but when received the word "setenta" (seventy) had been negligently omitted in transmission so as to make the quoted price "two five" instead of "seventy five." Upon receipt of the telegram Medillin wired plaintiff:

"I have deal closed, please send on to-day without fail."

These telegrams were transmitted and delivered on March 22, 1916. Upon receipt of the wire from Medillin, and on the same day plaintiff purchased for him $40,420 worth of Carranza money at $2.65 gold on the hundred, the same being the market price therefor, paying the total sum of $1,071.13 in gold therefor. The Carranza currency was transmitted to Medillin and billed to him at $2.75 gold per hundred. These transactions all occurred March 22, 1916. In response to the bill rendered, Medillin on March 23d, complained at the price charged, and claimed that plaintiff was bound to settle with him on the basis of $2.05 gold per hundred. Thereupon Gutierrez settled with Medillin on said basis. Gutierrez was not aware of the error in the transmission of the telegram until March 23d, when Medillin complained of the price of $2.75. Judgment was rendered for plaintiff in the sum of $242.52, that being the total amount of the difference between $2.05 per hundred and the market price of $2.75 per hundred actually paid by Gutierrez for the currency.

Opinion.

[1, 2] It is asserted that the telegrams between the parties did not constitute a contract for the reason that the first telegram was not an offer, but merely an approximate quotation of price at which Carranza money could be bought, and because plaintiff was simply acting as Medillin's agent and broker. As to the first objection it is sufficient to say that, whatever the nature of the first telegram, Medillin authorized plaintiff to purchase Carranza money, and the negotiations between the parties culminated in a complete and fully executed contract. As to the second, it makes no difference if Gutierrez was simply the agent of Medillin in the purchase of the money. The agency was limited, namely, to purchase at a particular price. If an agent to purchase pays more than his principal authorizes him to pay, he is liable to the principal for any excess of the principal's funds so expended. Clearly, Medillin did not authorize Gutierrez to pay more than $2.05.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[3] The difficult question in this case arises upon the contention that in the transmission of the message appellant acted as an independent principal, and not as the agent of plaintiff; hence is not liable to plaintiff. Upon this question the authorities are in hopeless confusion. Some of the courts take the position that the telegraph company is the agent of the sender of a message, especially where he selects it as a means of communication. Under this theory the sender is responsible in contract to the sendee, and the former, therefore, has a right of action against the telegraph company for any damages which he has sustained in carrying out his contract with the sendee.

A theory adopted by other courts is that which considers the telegraph company as an independent principal in transmitting the message. These decisions follow the English rule, and repudiate the idea that the telegraph company is the agent of the sender to transmit his communication to the addressee. Under this theory it is held that the minds of the sender and sendee of a message erroneously transmitted never meet and the sender does not become liable in contract to the sendee. Hence, if the sender reimburse the sendee for any loss sustained by the latter, the former cannot recover from the telegraph company for any funds so expended.

It would be profitless for this court to attempt to review the numerous decisions upon the subject. Among those adopting the latter rule are the following: Pepper v. Tel. Co., 87 Tenn. 554, 11 S. W. 783, 4 L. R. A. 660, 10 Am. St. Rep. 699; Shingleur v. Tel. Co., 72 Miss. 1030, 18 South. 425, 30 L. R. A. 444, 48 Am. St. Rep. 604; Strong v. Tel. Co., 18 Idaho, 389, 109 Pac. 910, 30 L. R. A. (N. S.) 409, Ann. Cas. 1912A, 55; McKee v. Tel. Co., 158 Ky. 143, 164 S. W. 348, 51 L. R. A. (N. S.) 439; Oil Co. v. Tel. Co., 171 N. C. 705, 89 S. E. 21; Tel. Co. v. Shaeffer, 110 Ky. 907, 62 S. W. 1119. This rule was applied in the Texas case of Harrison v. Tel. Co., 3 Willson Civ. Cas. Ct. App. § 44.

The distinguished Judge Thompson, in his work on the Law of Electricity (sections 480–2), denounces in unmeasured terms the English rule and the Pepper Case, supra, the leading case in this country adopting that view, and says that the weight of American authority is contrary thereto.

Jones on Telegraph & Telephone Co. (2d Ed.) § 487, says that "the prevailing view is that, as between the sender of a telegraph message and the innocent sendee, all losses caused by the errors or mistakes made in the transmission must be borne by the sender." At section 723 he says:

"It has been seen heretofore that contracts may be made between two persons by the medium of the telegraph, and while the telegraph company may be considered, in a certain light, an independent contractor with respect to said contract, yet it is very generally held that it acts as agent for the party employing its services, or the one suggesting these means to consummate such contract."

And section 745 the following:

"When an offer or proposition is made by mail or by telegram, it is not complete until it has been delivered to the sendee. The party making an offer—the same to be delivered by this means—appoints this agency to make the delivery. The postal system or telegraph being an agent of the sender, the offer is not complete so long as it remains in the hands of the agent, but so soon as it is delivered to the party to whom the offer is made it. then becomes complete. If there are any delays or mistakes made during the transmission of the offer, the party sending same must suffer the consequences."

See, also, sections 757 and 758. The same rule is announced in 27 Am. & Eng. Ency. Law (2d Ed.) 1092; also in 9 Cyc. 294.

In Ayer v. Tel. Co., 79 Me. 493, 10 Atl. 495, 1 Am. St. Rep. 353, upon facts identical with the instant case,.the Supreme Court of Maine held that the sender of a message embodying a commercial offer or acceptance is bound to the receiver by the terms of the message as delivered to the latter, and the court, in discussing the question whether in case of error in transmission the sender or receiver should suffer loss, says:

"We think the safer and more equitable rule, and the rule the public can most easily adapt itself to, is that, as between sender and receiver, the party who selects the telegraph as the means of communication shall bear the loss caused by the errors of the telegraph. The first proposer can select one of many modes of communication, both for the proposal and the. answer. The receiver has no such choice. * * * If he cannot safely act upon the message he receives through the agency selected by the proposer, business must be seriously hampered and delayed."

For other cases where the sender has been regarded as liable to the addressee, and held to have a right of action against the telegraph company, see Oil Mill Co. v. Tel. Co. (Ark.) 201 S. W. 273; Tel. Co. v. Shotter, 71 Ga. 760; Younker v. Tel. Co., 146 Iowa, 499, 125 N. W. 577; Saveland v. Green, 40 Wis. 431; Sherrerd v. Tel. Co., 146 Wis. 197, 131 N. W. 341.

In Hulme v. Mercantile Co., 149 S. W. 781, the Amarillo Court of Civil Appeals says that in cases of this kind the weight of authority is that the telegraph company is regarded as the agent of the sender; and that this fact will bind the sender, not according to the terms of the message as delivered to the telegraph company, but in accordance with the language of that transmitted and delivered to the addressee. Upon the facts stated in that case, however, the pertinency of the ruling is not apparent. See, also, Tel. Co. v. Land Co., 61 Tex. Civ. App. 168, 128 S. W. 1162.

Without undertaking to lay down as a general rule that the telegraph company is in all instances to be regarded as the agent of the sender, yet upon the facts reflected by this record we think it should be so regarded. Upon this view Gutierrez became bound to settle with Medillin at the price for Carranza.

money quoted in the telegram actually delivered to Medillin. Notwithstanding the previous communications between Gutierrez and Medillin had been by letters, the former, when he undertook to quote to the latter the price of Carranza money, employed the telegraph company as the agency of communicating the quotation. Medillin, in good faith, acted upon the telegram actually transmitted and received by wire. It seems to us that reason and justice demand that Gutierrez should be bound to protect him against any damage arising out of the negligence of the agency which the former used to quote prices. The quotation from the Ayers Case, supra, is regarded as announcing the correct viewpoint.

[4] As to those assignments which complain of the court's refusal to give effect to certain provisions upon the back of the telegram, relied upon by appellant as limiting its liability for its negligence in erroneously transmitting the telegram, it suffices to refer to the rule announced by our Supreme Court in Tel. Co. v. Bailey, 108 Tex. 427, 196 S. W. 516. This decision is controlling upon this court. Tel. Co. v. Prewitt, 199 S. W. 316.

All other questions presented have been considered, and are regarded as without merit.

Finding no error, the judgment is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes