ST. LOUIS, B. & M. RY. CO. v. JENKINS.
(No. 5397.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 20, 1915. Rehearing Denied Feb. 3, 1915.)

1. MASTER AND SERVANT (§ 297*)—INJURIES TO SERVANT — SPECIAL FINDINGS — INCONSISTENCY.

In an action for the death of a railway engineer killed when his engine left the track, the jury answered a special issue as to whether the track was uneven or not properly ballasted, or whether there were sunken joints in it, in the negative. It also found specially that the track was not in a reasonably safe condition for the passage of locomotives and trains; that this, with the nature of the engine, was the proximate cause of the wreck; that the track was not reasonably safe for high speed, or for a work train at a low speed; that the locomotive in question could be run on the track at 15 miles an hour with safety; that deceased had orders not to run it over 12 miles an hour; that defendant was not exercising ordinary care to have the track in safe condition; that it could not have known of the unsafe condition by the exercise of ordinary care; and that deceased was operating the train at from 8 to 15 miles an hour. Held, that, even construing the answer to the first mentioned issue, its meaning being doubtful, as a finding that the road was not properly ballasted, the findings were still in direct conflict and a judgment thereon could not be sustained.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1195–1198; Dec. Dig. § 297.*]

2. TRIAL (§ 350*)—SPECIAL INTERROGATORIES —QUESTIONS TO BE SUBMITTED.

The special issue law was intended to simplify trials by the submission to the jury of those matters touching the liability or nonliability and the pertinent defenses, and was not intended to require a finding on every fact tending to establish or disprove these main issues.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. § 350.*]

3. EVIDENCE (§§ 121, 317;* § 275½ New, vol. 18 Key-No. Series)—HEARSAY—EXCEPTIONS TO RULE.

Where, in an action for death, it was shown that deceased, after the death of his mother, who was named as the beneficiary in an insurance policy, made his younger brother the beneficiary for the purpose of showing that he would

not have contributed to the support of his father for whose benefit the action was brought, evidence that the mother, on her deathbed, but some time before her death, requested deceased to make this change, was not admissible as res gestæ, as a dying declaration, or under any other exception to the rule excluding hearsay evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 303, 307–338, 1117, 1119, 1174–1192; Dec. Dig. §§ 121, 317.*]

4. EVIDENCE (§ 275½, New, vol. 18 Key-No. Series)—HEARSAY—DYING DECLARATIONS.

A statement that would not be admissible if declarant were living is not admissible as a dying declaration, and the declarant must have knowledge of the transaction.

5. DEATH (§ 104*)—ACTIONS—INSTRUCTIONS—MEASURE OF DAMAGES.

Where, in an action for death, the court submitted a special issue as to the sum which, if paid at the time of the trial, would be equal to the pecuniary benefit that plaintiff had a reasonable expectation of receiving, it was not necessary to tell the jury to find what total sum deceased would have contributed to plaintiff had he lived, and then discount this by deducting interest to show the present worth.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 142–148; Dec. Dig. § 104.*]

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by Jesse F. Jenkins against the St. Louis, Brownsville & Mexico Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Claude Pollard and E. H. Crenshaw, Jr., both of Kingsville, and H. R. Sutherland and Robt. W. Stayton, both of Corpus Christi, for appellant. Jno. C. Scott and W. L. Dawson, both of Corpus Christi, for appellee.

CARL, J. This cause was before this court once before, and is reported in 163 S. W. 621 et seq., to which reference is here made for a full statement of the nature of the case. Such other matters as may be necessary will be stated in the course of this opinion.

[1] The case was submitted to the jury on 35 special issues, and, out of that maze of issues, the jury emerged with several answers that are charged to be inconsistent to such an extent that a judgment cannot properly be based thereon. Some of those issues, and the answers thereto, are as follows:

"(3) Say whether or not the railroad track at and near the place where the wreck occurred was uneven, or was not properly ballasted, or were there sunken joints in it at and near that place? Answer: No."

"(16) On the morning of September 22, 1906, state whether or not the track and roadbed of defendant at the place of the wreck was in a reasonably safe condition for the passage of locomotives, cars, and trains. Answer: No."

"(19) If you have answered special issue No. 16 in the negative, then state whether or not the defendant, by the exercise of ordinary care, would have known that said track at and near the place of the wreck was not in a reasonably safe condition for the passage of locomotives, cars, and trains over the same. Answer: No."

"(5) If there were sunken joints in the track, or it was uneven or not properly ballasted at and near the place where the wreck occurred, say whether or not the condition of the track, either alone or in connection with the fact of the engine being a switch engine, without front or pony trucks, was the proximate cause of the wreck and death of the engineer? Answer: Yes."

"(7) Say whether or not the fact that the engine he was operating at the time of his death was a yard or switch engine, without front or pony truck, either alone or in connection with uneven track and sunken joints in the same and the track not being properly ballasted, if such was the condition of the track and roadbed at and near the place where the wreck occurred, the proximate cause of the wreck and death of the engineer? Answer: Yes."

By their answer to special issue No. 3, it will be seen the jury said that the track was not uneven at the place where the wreck occurred, was properly ballasted, and there were no sunken joints. In answer to special issue No. 16, the jury said that the track at that place was not in a reasonably safe condition for the passage of locomotives, cars, and trains, which is equivalent to saying that the track was not even or properly ballasted, and that it had sunken joints in it, and that this condition was due to the negligence of the railway; and this, together with the nature of the engine, was the proximate cause of the wreck. In further answer, they say, virtually, that the track was not reasonably safe for high speed or for the work train at a slow speed; and then, in answer to issue No. 13, that this locomotive at the time of the wreck could be operated along this track at 15 miles per hour with safety. They also find that deceased had orders not to operate at above 12 miles per hour, that the defendant was not exercising ordinary care to have the track in safe condition, and that the defendant could not have known of the unsafe condition of the track by the exercise of ordinary care. Further, that deceased was operating the train at from 8 to 15 miles per hour at the time of the wreck.

It will be noted that the finding, in answer to No. 19, that the defendant would not, by the exercise of ordinary care, have known that said track was, at or near the place of the wreck, in bad condition, is in direct conflict with the answer to No. 15, to the effect that the defendant failed to exercise ordinary care to have its track in a reasonably safe condition. Even if we should eliminate the clause in No. 3, "or was not properly ballasted," or construe the answer to say that the road was not properly ballasted (which meaning is doubtful), the answer there given and the answer to No. 16 are conflicting, because failure to ballast would not necessarily mean that the road was unsafe. It would then mean, by said answer to No. 3, that the track was not uneven and did not have sunken joints. The jury said, however, in answer to No. 16, that the track was not in a safe condition; and then that the railway, by the exercise of ordinary care, would not have known these facts. Answering No. 15, the

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

jury said that the defendant was failing to exercise ordinary care to have its roadbed and track in a reasonably safe condition on the morning of September 22, 1906, the date of the accident, and this answer is in direct conflict with the answer to No. 19 above referred to.

[2] These answers are inconsistent and contradictory, and this court, although desirous of giving effect to verdicts where the plain meaning may, upon the whole, be ascertained, will never sustain a judgment rendered upon any such crazy-quilt, haphazard guesswork as the jury's findings in this case appear to be. It is inconceivable that any ordinary damage suit for personal injuries should require the submission of 35 special issues. The special issue law was intended to simplify trials by the court submitting to the jury for determination those matters touching the liability or nonliability in the cause and pertinent defenses, and was not intended to have the jury make a finding on every fact which tends to establish or disprove those main issues. Instead of presenting a simplified case to this jury, made up of a few real issues, they are led into a maze of conflicting findings, in struggling to extricate themselves from the avalanche of questions, to such an extent that no man can tell what they did intend to find.

Assignments Nos. 1, 2, and 3 are sustained.

Assignment of error No. 4, in the form in which it is presented, is overruled.

[3] The next matter raised is:

"The court erred in allowing plaintiff to testify, in substance, that his wife before her death told Harvey Jenkins that she wanted his policy changed so that Fred could get a chance at schooling; over the objection that the question, calling for such testimony, called for hearsay testimony, whereas none of the exceptions to the hearsay rule obtained."

The defendant had introduced evidence for the purpose of showing that the deceased had broken with his father, appellee herein, and would not thereafter have contributed to his support. To do this, it was proven that he had changed the beneficiary in his insurance policy from his mother, after her death, to his younger brother, Fred. It was already in evidence that, after the death of his mother, deceased did not make his insurance payable to his father. The railroad company relied upon this as one circumstance to show that deceased did not intend to contribute longer to his father's support. The statement is claimed to have been made on her deathbed. The question asked and answer made, over objection, were:

"Q. Now, Mr. Jenkins, what did your wife say to Harvey Jenkins with regard to changing this insurance policy? A. She told him that Fred, he was a young boy and not—and wasn't a boy, you know, wasn't—you would not call him a very healthy boy at that time; he was a boy, a slender looking boy, and his mother thought always just like this: She thought there was nothing in the world like Freddie, and she wanted the policy changed. Now, understand, she wanted the policy changed so that Fred would get a chance for schooling if Harvey (deceased) was killed."

The statements of Mrs. Jenkins alluded to occurred about 15 days before she died, and subsequent to her death the insurance policy was changed, making Fred the beneficiary. Even if this were put upon the basis of a dying declaration of Mrs. Jenkins, it is not Harvey Jenkins' statement, and would not be a part of the res gestæ of the changing of the policy. This did not take place until some time after Mrs. Jenkins died, and such request on the part of the mother was not a declaration on the part of the son. The fact that the beneficiary in the insurance policy was changed is established by the uncontradicted evidence. Even if we put it on the basis of a will, the validity of the act is not questioned, and it is not necessary or proper to introduce evidence as to the mental condition of the testator. Jones on Evidence, 609. If Mrs. Jenkins had been alive, her testimony as to her request to change the policy would not be a part of the res gestæ, because the policy was not changed until some time after her death, which was about 15 days after the conversation took place. Suppose her request was made under all the solemnity of a dying declaration, so far as she was concerned, certainly it was not such as to Harvey Jenkins; and, since the change in the policy is not impeached, that fact speaks for itself.

[4] The admission of dying declarations and matters res gestæ are admitted out of necessity in certain cases, but no such necessity exists here. It is not on a footing with a case where a man is shot, or hurt in a wreck, and spontaneously, and generally in agony, cries out, telling how it happened. A statement that would not be admissible if the witness were living is no more admissible as a dying declaration, and the declarant must have knowledge of the transaction. Jones on evidence, 333. This evidence was not admissible as a dying declaration, because Harvey Jenkins did not make it, and, even if his apparent assent to his mother's request be construed as a declaration on his part, he was not then in extremis so as to make it admissible as his declaration. Neither is it admissible as res gestæ to throw light on the validity of the transfer of the policy, because that is admitted and needs no aid from such testimony. Its sole function was to counterbalance the fact that the policy was not transferred to the father, by weighing against that fact a mother's love for a younger son, which is always beautiful to behold, but nevertheless totally inadmissible in this case.

The fifth assignment is sustained. G., C. & S. F. Ry. Co. v. Finley, 11 Tex. Civ. App. 71, 32 S. W. 51.

The sixth and seventh assignments are overruled, because the witness had sufficiently shown that he did not have the letter and

did not know where it was, to enable him to testify as to its contents.

[5] The charge on the measure of damages, complained of in the eighth and ninth assignments, is a reasonably plain presentation of the rule, we think, so that the jury understood what was meant. It is not necessary to tell a jury to find what total sum deceased would have contributed to appellee had he lived, and then to discount that sum by deducting the interest at the legal rate, so as to show the present worth of the total sum so found. The issue submitted was:

"Say what sum of money, if paid now, would be equal to the pecuniary benefit, if any, that plaintiff had a reasonable expectation of receiving from his deceased son, had he lived."

These assignments are overruled.

There is no evidence of prejudice or passion on the part of the jury, and the tenth assignment is overruled.

On account of the errors mentioned, the judgment is reversed, and the cause is remanded for trial.