WESTERN UNION TELEGRAPH CO. v. ARMSTRONG. (No. 2017.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 13, 1918. Rehearing Denied Nov. 14, 1918.)

1. COMMERCE ☞28—NEGLIGENT DELIVERY OF MESSAGE—WHAT LAW GOVERNS.

Where a telegram was sent from another state into Texas, and through the negligence of the office in Texas was not delivered, the measure of damages is governed by the state decisions and not the federal decisions, and mental anguish is an element of actual damage.

2. APPEAL AND ERROR ☞1056(3)—HARMLESS ERROR—EVIDENCE—EXCLUSION.

Exclusion of evidence which has no probative force is immaterial and harmless.

3. TELEGRAPHS AND TELEPHONES ☞54(7), 66 (1)—LIABILITY OF TELEGRAPH COMPANY— LIMITATION OF LIABILITY.

Those who deal with telegraph corporations are entitled, if they insist upon it, to have their messages transmitted and delivered free from all conditions or limitations, except those imposed by the law of the land, and, when a surrender of any part of that right is claimed, the telegraph company must be able to establish a valid agreement to that effect.

4. TELEGRAPHS AND TELEPHONES ☞54(7)— LIABILITY OF COMPANY CONDITIONS— RULES.

A rule of a telegraph company that telegrams should be written on certain forms, and the stipulations on the back of such forms, were not binding on the sender of a telegram, having no knowledge thereof, who telephoned a message, although the agent recorded the message upon one of such blanks.

5. PLEADING ☞291(1) — REPLY — WRITTEN CONTRACT—VERIFICATION.

Where the sender of a telegram telephoned the message and the telegraph agent, without the sender's knowledge, wrote it upon one of its forms, a verified reply denying the execution of a written contract by the sender was not necessary.

6. TELEGRAPHS AND TELEPHONES ☞71— MENTAL SUFFERING—EXCESSIVE DAMAGES.

Verdict of $1,250.64 for mental suffering resulting from being deprived of opportunity to be with and nurse a sister during her last illness and to be present at the burial was excessive, and will be reduced to $500.

Appeal from District Court, Titus County; J. A. Ward, Judge.

Action by Mrs. Lula Armstrong against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed on condition of remittitur.

Chas. S. Todd, of Texarkana, and Albert T. Benedict, of New York City, for appellant. Wilkinson & Davidson, of Mt. Vernon, T. C. Hutchings, of Mt. Pleasant, and J. F. Wilkinson, of Austin, for appellee.

HODGES, J. This appeal is from a judgment in favor of the appellee for the sum of $1,250.64 as damages for mental suffering due to the negligent failure of the appellant to deliver a telegram notifying her of the serious illness of her sister. There is little, if any, dispute about the facts. On February 8, 1916, J. L. Landers sent the following message from Normandy, Tenn., to the appellee at Mt. Pleasant, Tex.:

"To Mrs. Lula Armstrong, Mt. Pleasant, Texas. Like for you to come if possibly can. Had Sister operated on Tuesday. Mother has given out and cannot wait on her any longer. Three gallons of water from her system today."

Landers was a brother, and the "Sister" referred to in the message was a sister of the appellee. The message was received at Mt. Pleasant, but, because of conduct which is admitted to be negligent, was not delivered till several days after appellee's sister died and was buried.

[1] By appropriate assignments the appellant presents the same general propositions involved and discussed in Telegraph Co. v. Bailey, 184 S. W. 519; s. c., 108 Tex. 427, 196 S. W. 516; and Telegraph Co. v. Brown, 202 S. W. 1049. That defense was based upon the fact that, this being an interstate message, the measure of damages was governed by the federal decisions, and mental anguish should not be allowed as an element of actual damage. It is unnecessary to add more to what has heretofore been said on those subjects, and the cases above cited are referred to as authority for overruling that group of assignments.

Among other defenses relied upon was the failure of the appellee to present her claim for damages within 95 days after her cause of action arose. Appellant pleaded specially that it had adopted a rule requiring each message for transmission to be written upon a form provided by it for that purpose, or that the message should be attached to that form by the sender or his agent so as to leave the printed heading in full view above the message. Upon the trial of this case it offered in evidence a copy of that rule. It also offered in evidence the following stipulation printed on the back of its blank forms:

"Clause 6. The company shall not be liable for damages, or for statutory penalties, in any

case where the claim is not presented in writing within ninety-five days after the cause of action, if any, shall have arisen."

The rule was excluded upon the ground that there was no evidence that it had been filed with the Interstate Commerce Commission. The printed stipulation on the blank form was excluded upon the ground that it was not binding upon the appellee.

The testimony offered by the appellee, and which was not disputed, shows that J. L. Landers, the sender of the message, lived at Normandy, a small town in Tennessee, which was without any telegraph office. It was the custom of people living at Normandy, when desiring to send telegraphic messages, to phone them to the appellant's office at Shelbyville, a short distance away and in the same state. On February 8th Landers called the appellant's agent at Shelbyville over the telephone and communicated orally the message hereinbefore quoted. The agent accepted the message and agreed to transmit it. No written memorandum was made by Landers, nor was there any mention by either Landers or the agent of such memorandum. Landers testified, without contradiction, that he did not know of any rule adopted by the telegraph company requiring their blanks to be used on such occasions, and did not know whether the agent subsequently used one; neither did he know that the telegraph blanks used by the appellant had printed on them stipulations such as the clause offered in evidence.

[2, 3] The evident purpose of the testimony excluded was to establish the fact that the parties to the message were bound by the contractual stipulation requiring the claim for damages to be presented within 95 days after the cause of action arose. While the particular objections urged to the introduction of the rule requiring the use of appellant's blanks may have been insufficient to justify its exclusion, the error is immaterial and harmless if the testimony had no probative force. If it did not, then there is no good reason for reversing this case in order to permit the introduction of testimony valueless when admitted, or which may be excluded upon other grounds. Let us concede that the appellant had adopted a rule requiring its blank forms to be used in receiving messages for transmission. The evidence in this case shows that none was used or authorized to be used by the sender on that occasion. The adoption of the rule when proved could only be regarded as a circumstance tending to show that appellant's agent at Shelbyville, after receiving the message over the telephone, may have recorded it upon one of appellant's blanks on the back of which was the printed stipulation relied upon in this case. Assuming that the agent did this, was that act sufficient to bind the opposite party to

207 S.W.—38

the terms of a stipulation of which he was entirely ignorant? A telegraph company cannot escape the legal consequences of its misconduct without the consent of the injured party. A liability which the law imposes upon it remains till it is voluntarily released by the person with whom the company is dealing. If in advance of the transmission of a message the telegraph company desires to secure concessions which relieve it of any part of the legal consequences of a breach of duty, or which bind the other party to a course of procedure different from that prescribed by law and more favorable to the telegraph company, there must be a valid contract to that effect. The making of contracts with telegraph companies is in all material respects governed by the same rules that control the making of contracts generally. The stipulations and terms must be knowingly and voluntarily agreed to by the party they undertake to bind. It is true that telegraph companies, as public service corporations, have the right to adopt and enforce reasonable rules for the regulation of their dealings with the public; but this does not include the power to indirectly compel the senders of messages, and other beneficiaries, to surrender any part of their legal rights in claims for damages resulting from a breach of duty. Telegraph companies cannot, under the guise of exercising a rule-making power, secure an immunity which only a contract can give. They will not be permitted to adopt a rule requiring all messages tendered for transmission to be written upon their blank forms, and then provide as their only forms those which contain printed stipulations imposing conditions and limitations upon the liability of the company. Those who deal with such corporations are entitled, if they insist upon it, to have their messages transmitted and delivered free from all conditions or limitations except those imposed by the law of the land. When a surrender of any part of that right is claimed, the telegraph company must be able to establish a valid agreement to that effect.

[4] If in this case the court had admitted in evidence the rule and the printed stipulation offered, the evidence would not have made out the defense for which it was intended. The important question before the court was, not what the telegraph company did under its rule-making power, but what the parties to the contract agreed to at the time this message was sent. The appellant offered no other evidence tending to show that the message was reduced to writing in any form or upon any character of blank. It may be, and doubtless is, correct to say that one who voluntarily uses, without objection, a telegraphic blank which bears upon its face notice that the message is sent subject to the conditions and stipulations appearing on the back, is chargeable with a knowledge of those

conditions and stipulations, and, in the absence of some express dissent, becomes bound by them; but it does not follow that one who delivers an oral message to an agent of the telegraph company can be obligated to those conditions by the unauthorized act of such agent in recording the message upon one of those blanks for convenience in transmission. In this instance, when the appellant's agent at Shelbyville accepted the oral message from Landers over the telephone the contract between Landers and the appellant was completed, and it is of no consequence what the agent thereafter did without the knowledge or the consent of Landers.

[5] Counsel for appellant insists that, in the absence of a verified reply denying the execution of a written contract by Landers, its defense founded upon that issue could not be attacked. The rule invoked applies only to written contracts, and in this case no written contract was replied upon by the appellee, nor was any offered in evidence by the appellant. Hence the objection is untenable.

[6] It is also urged that the verdict in this case is excessive. It appears from the testimony that the only injury sustained by Mrs. Armstrong was the mental suffering resulting from being deprived of the opportunity to be with and nurse her sister during the latter's last illness and to be present at the burial. While our courts recognize that such injuries constitute the basis for actual damages, they have never adopted any rule by which to determine its measure other than the reasonable estimate of the trial court or the jury. We are of the opinion, however, that the verdict in this case transcends the limits usually allowed in such instances as compensation for mental suffering. We think a verdict for $500 would, under the circumstances, be sufficient.

If the appellee should within 20 days from this date file in this court a remittitur of $750.64, the judgment will be affirmed. Otherwise, it will be reversed, and the cause remanded for another trial.