## WESTERN UNION TELEGRAPH CO. v. GOODSON.   (No. 512.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 20, 1919. On Rehearing, Jan. 15, 1920.)

1. TELEGRAPHS AND TELEPHONES 37(6)—MANUAL DELIVERY OF TELEGRAM TO BE PHONED NOT REQUIRED THOUGH PHONE IS OUT OF ORDER.

It was not necessary for a telegraph company to make a manual delivery of a telegram addressed to G., "phone care Moore's Bluff Pumping Plant," although the telephone lines were not in working order; plant being situated seven miles from the town where the telegram was sent.

2. TELEGRAPHS AND TELEPHONES 37(6)—REASONABLE CARE TO BE USED IN PHONING MESSAGE.

Where a telegram was sent to a town and was to be delivered by telephoning it to the sendee at another point, it was the duty of the telegraph company to use reasonable care to deliver it to the sendee by telphoning it.

3. TRIAL 352(1)—SPECIAL ISSUE AS TO NEGLIGENCE IN PHONING MESSAGE TOO GENERAL.

In an action for failure to deliver a telegram, the contract requiring message to be phoned, defendant claiming that the telephones were out of order, and plaintiff maintaining that the telephones were only out of order for a short time, a special issue, "Was the defendant guilty of negligence in failing to deliver said telegram to the plaintiff after the same was received by its agent at D?" was too general.

4. TRIAL 351(2)—SUFFICIENCY OF REQUESTED SPECIAL ISSUE TO CALL FOR ACTION BY COURT.

Where there is a material issue which the court does not submit, a party desiring the submission of such issue is entitled to request its submission in writing, and although the requested issue may not be strictly correct, yet, if as tendered it be sufficient to call the trial court's attention to its failure to charge on the issue, it should frame one and correctly submit the issue to the jury; but, where the trial court charges on or submits a material issue which is not correct or full enough, the complaining party should frame a charge or special issue that is correct, and, if the court then refuses to give such correct charge or special issue its refusal would be reversible error.

**5. TELEGRAPHS AND TELEPHONES ⊜=37(6)— ATTEMPT TO PHONE MESSAGE ONCE NOT DUE CARE.**

Where a telegram was sent to a certain town with directions to telephone it, that receiving agent attempted once to telephone the message, and was informed by the telephone company that .the line was out of order, did not necessarily acquit the telegraph company of the duty of later making a further effort to transmit the message by telephone.

**6. TELEGRAPHS AND TELEPHONES ⊜=71— AMOUNT FOR FAILURE TO DELIVER TELEGRAM EXCESSIVE.**

A verdict for $1,950 against a telegraph company for negligent failure to deliver a telegram to plaintiff so that plaintiff could send his brother to the bedside of his sick father was excessive and should be reduced to $500.

**7. APPEAL AND ERROR ⊜=1004(1)—APPELLATE COURTS RELUCTANT TO DISTURB AMOUNT OF RECOVERY.**

The amount of damages to be awarded one to whom a telegraph company negligently fails to deliver a telegram notifying him of the sickness of his father is a question peculiarly addressed to the sound and impartial judgment of the jury the appellate courts are reluctant to disturb the verdict of the jury as to the amount that should be awarded.

Appeal from District Court, Liberty County; J. L. Manry, Judge.

Action by, W. A. Goodson against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed on remittitur.

F. J. & C. T. Duff, of Beaumont, for appellant.

E. B. Pickett, Jr., and C. H. Cain, both of Liberty, for appellee. .

HIGHTOWER, C. J. This is the third appeal of this case to this court. The disposition made on the first appeal will be found in 188 S. W. 736, and the disposition of the second appeal will be found·in 202 S. W. 766. The trial from which this appeal comes was with a jury, and the case was submitted upon special issues, and resulted in a verdict in favor of the appellee, Goodson, for $1,950. It will be unnecessary to here set out any of the pleadings of the parties, because they are substantially the same as they were upon the former trials, and the issues clearly appear in the former opinions of this court, above referred to.

There are five assignments of error made by appellant on this appeal, and by the first three of these assignments appellant complains, substantially, that its general demurrer should have been sustained by the trial judge. This contention was made by appellant on each of the former appeals, and each time this court held adversely to appellant in that regard. We have carefully reviewed our former decisions on the point and the additional authorities cited by appellant in its present brief, and we have also followed with much interest the forceful argument of appellant's able counsel in their attempt to persuade this court to recede from its holding on the former appeals. After full consideration, however, of all the reasons advanced by appellant, we have concluded that our opinion on the last appeal of this case was. correct, and we still adhere to it, and it follows that in our opinion the first three assignments must be overruled.

The fourth assignment of error complains of the action of the trial court in overruling appellant's objection to special issue No. 2 submitted to the jury. Special issue No. 2 was as follows:

"Was the defendant guilty of negligence in failing to deliver said telegram to the plaintiff,ˊW. A. Goodson, after the same was received by its agent at Dayton, Tex.?"

The jury's answer was in the affirmative. The objection made to this issue was as follows:

"Defendant objects to question No. 2 because the court nowhere in its charge informed the jury as to what duty or diligence the defendant company was charged with in delivering said telegram, nor what act or failure to act on the part of the defendant company in an attempt to deliver said message would constitute negligence."

The trial court overruled this objection. Thereupon appellant requested that the trial court give to the jury this special issue, in lieu of said special issue No. 2, to wit:

"On the arrival of the message at Dayton, did the agent of the telegraph company attempt to 'phone same to the plaintiff at the Moore's Bluff Pumping Plant, and was he informed by the agent of the telephone company that said telephone was not in working order and that Moore's Bluff Pumping Plant station could ꓵot be reached by 'phone?"

The court refused to submit this special issue, and appellant duly excepted, and also assigns this action of the court as error. The proposition under this assignment is as follows:

"The message in this suit being· addressed ‘W. A. Goodson, Dayton, Texas,’ with instructions to the telegraph company to 'phone same, care of Irrigating Pumping Station, the telegraph company was under no duty or obligation to deliver the message except by 'phoning same to the irrigating pumping station."

[1] We agree with the proposition of appellant that, under the facts in this case, the telegraph company was under no legal obligation to deliver to appellee the message in question, except by 'phoning the same to Moore's Bluff Pumping Plant, because that was the very contract which the message

clearly implies. The message under consideration was received by appellant's agent at Stockdale, Tex., and was addressed to appellee, and read as follows:

"W. A. Goodson, 'phone care Moore's Bluff Pumping Plant, Dayton, Texas, send Oscar at once to help wait on his father, Lida sick. [Signed] L. D. Hopkins."

The evidence in this case shows, without dispute, that Moore's Bluff Pumping Plant is between seven and eight miles from Dayton, and also shows, without dispute, that all the parties to the message fully understood that the message was to be 'phoned to appellee from Dayton, Tex., over the 'phone line extending from that town to said pumping plant. The evidence was in dispute as to whether the 'phone line was in working order on the day (the 9th of December, 1914) that this message was received at appellant's Dayton office, though there was evidence sufficient to show, if believed, that the 'phone line, while it had been out of repair in the early part of he day, had been so repaired by 10:30 or 11 o'clock of that day that messages could be and were sent from Moore's Bluff Pumping Plant to Dayton, and could have been sent anyhow by as early as 11 o'clock on that day from Dayton to said Pumping Plant. Appellant's agent at Dayton testified that, as soon as he received this message at the Dayton office, he called up from the station the 'phone central office at Dayton, and informed the telephone operator that he desired to get in communication with Moore's Bluff Pumping Plant for the purpose of repeating this telegram to appellee, Goodson, and was then told by the telephone operator at Dayton that the line was out of order, and that it could not be used. Appellant's agent states that thereafter and within 10 or 15 minutes he went out in town, taking the telegram with him, thinking perhaps that he would see some one by whom he might send the message to appellee, and that he passed by the telephone office and went in to see if he might not be able to get in connection with the pumping plant by 'phone, and again found that the 'phone line was still out of order and that he could not transmit the message by that means. Thereafter, somewhere between 1 and 3 o'clock on that day, appellant's agent handed the telegram to a Mr. Jackson, who was a neighbor of appellee, requesting Mr. Jackson to deliver the telegram to appellee; but Mr. Jackson forgot all about it, and the message was never delivered to appellee.

[2-4] Now, the allegation of the plaintiff in this connection was, substantially, that it was the duty of the appellant company to promptly deliver said telegram to appellee by 'phoning the same to Moore's Bluff Pumping Plant, and that it negligently failed to do so. This allegation was, in our opinion, in keeping with the true import of the very language of the telegram itself, that is to say that it was the duty of appellant to use reasonable care to deliver it to appellee, if it could, by 'phoning it from Dayton to Moore's Bluff Pumping Plant, and we are of opinion that the submission of the issue to the jury, as was done by special issue No. 2, was in terms too general. In other words, we think that the court ought to have been more specific and should have asked the jury substantially whether or not the defendant used reasonable diligence to 'phone the message from Dayton to appellee at Moore's Bluff Pumping Plant. That would have put the issue squarely up to the jury, but it cannot be said that the failure of the court to couch the issue in more specific terms was affirmative error; but, at most, it can only be said that the issue was couched in terms too broad. Certainly, it cannot be successfully contended that the issue of negligence on the part of appellant, for which recovery was sought, was not submitted to the jury; in other words, that there was no charge by the court upon that issue. We understand the rule to be that, where there is a material issue raised by the pleadings and the evidence which the court does not submit in its general charge, then a party desiring the submission of such issue is entitled to request its submission in writing, and although the requested issue may not be strictly correct, yet, if as tendered it be sufficient to call the trial court's attention to his failure to charge on the issue and to operate as a request that such issue be submitted, then the court, if he rejects the tendered issue on the ground that it is not strictly correct, should frame one and correctly submit the issue to the jury, and his refusal to do so might be reversible error. But where the trial court charges on or submits a material issue, but his charge or submission is not correct or full enough, then the party complaining of the court's charge or special issue should frame a charge or special issue that is correct, and, if the court then refuses to give such correct charge or special issue, its refusal would be reversible error, but not so unless the specially requested charge or special issue be a correct one.

[5] Now, it cannot be said that issue No. 2 submitted by the court, though in terms very general, was not a submission of the issue of negligence at all, and therefore, if appellant desired that the issue be more specifically submitted, it should have framed its request in such a manner as to have properly submitted the very issue of negligence to be determined by the jury. In other words, if appellant had requested the court to ask the jury this question:

"Did the defendant's agent at Dayton use reasonable diligence to transmit to appellee the telegram in question by 'phoning or attempting to 'phone the same from Dayton to Moore's Bluff Pumping Plant?"

—then we would have had a different question before us, for, if the jury had answered such question or a similar one in the affirmative, such answer would have been, in our opinion, a complete acquittal of appellant of negligence in this case. But the question or issue which appellant tendered, instead of the court's issue No. 2, was not drawn with the view of having the jury to answer whether or not appellant used reasonable diligence in its attempt to deliver the message in question by 'phoning or attempting to 'phone the same to Moore's Bluff Pumping Plant, but that question only required the jury to answer whether appellant's agent inquired of the telephone company at Dayton of the condition of the telephone line, and whether appellant's agent was informed by the telephone agent that the telephone line was not in working order. It may be very true that appellant's agent, immediately upon receipt of the message, did, as he testified, make inquiry of the telephone agent and was informed that the telephone line was at that moment out of order, but that would not necessarily acquit appellant of the duty of making further effort to transmit the message by 'phone, and the evidence adduced by appellee was sufficient to show, if given credence by the jury, that the message could have been 'phoned from Dayton to appellee at Moore's Bluff Pumping Plant in time to have enabled him to send his brother Oscar to wait on his sick father, and that appellee would have done so. Appellant's requested issue was properly refused. Railway Co. v. Miller, 79 Tex. 82, 15 S. W. 264, 11 L. R. A. 395, 23 Am. St. Rep. 308; Railway Co. v. Jenkins, 172 S. W. 986; Railway Co. v. Hapgood, 184 S. W. 1075. The fourth assignment is overruled.

[6, 7] By its fifth assignment, appellant complains that the verdict of the jury allowing appellee damages for $1,950 is grossly excessive, and that appellant's motion for new trial should have been granted upon that ground. We sustain this assignment. In doing so, we are not unmindful of the rule generally announced that the amount to be awarded a plaintiff in a case of this character is a question peculiarly addressed to the sound and impartial judgment of the jury, and that usually the appellate courts are reluctant to disturb the verdict of the jury as to the amount that should be awarded. In this case, however, we have concluded that there is no basis in the evidence for the very large amount that the jury awarded the appellee, and we are satisfied that the jury must have been actuated by sympathy for the appellee or prejudice against appellant or by some other motive that should not have controlled the jury on this issue. It must be remembered, as we have heretofore held on the last appeal of this case, that the appellee had only one element of damages that could enter into the jury's estimate in reaching its verdict, and that was because he was deprived of the opportunity to send his brother Oscar to wait on his sick father, to do which would, of course, have afforded appellee, assuming that he was a natural son, pleasure. There is no contention that appellee was deprived of the privilege of attending his father's funeral, because he did attend the funeral, and really there is nothing in the evidence to indicate that, if his brother Oscar had been sent, and had reached Stockdale in time to have nursed his father (which could have been for only a very few hours), any good whatever could have been done, nor is it even reflected by the record that appellee's father would have been conscious of Oscar's presence had the message been delivered in time for the latter to have reached his father's bedside. The record shows that appellee's father was between 72 and 73 years of age at the time of his death, and that appellee himself was a man approximately 50 years of age; that the father had lived with appellee most of the time during the last 20 or 25 years, and considered appellee's home his home; that just about two months prior to the father's death he had left the home of appellee in Liberty county, and had gone to live a while with his daughter, Mrs. Hopkins, at Stockdale; that he was in poor health at the time he left appellee's home; and that appellee was apprehensive that his father might get worse, and had made arrangements with his brother-in-law and sister to notify him in the event of a change for the worse in his father's condition. These are the material facts, substantially stated, upon which the jury in this case awarded appellee damages in the sum of $1,950.

We shall not discuss the question at length, because we realize that little light could be thrown upon it by the citation of authorities. Each case, upon this point, must rest upon its own facts. Tel. Co. v. Armstrong, 207 S. W. 593, and Tel. Co. v. Bouchell, 28 Tex. Civ. App. 23, 67 S. W. 159, were cases where the jury had returned a verdict in favor of the plaintiff against the telegraph company in the sum of $1,250, and in each case the appellate court held that $500 was the most that ought to have been allowed the plaintiff. We think that the facts in those cases were much stronger in support of the jury's verdict on the question of amount than are the facts in this case, and, while we are aware that there are other reported cases in this state in which verdicts have been affirmed for larger amounts than the court felt justified in allowing in those two cases, nevertheless we are unanimously of the opinion that the facts in this case will not justify a verdict in favor of appellee in excess of $500.

Therefore the fifth assignment will be sus-

tained, and the judgment will be reversed and the cause remanded, unless the appellee will file in this court, within 20 days from this date, a remittitur of $1,450, reducing the judgment in favor of appellee to $500, in which event the judgment will be affirmed.

It is so ordered.

### On Rehearing.

On the 5th day of December, 1919, the opinion of this court was filed in this cause, in which it was held that the verdict in favor of appellee was excessive, and the judgment of the trial court was ordered reversed, and the cause remanded, unless the appellee would file, within 15 days from that date, a remittitur of $1,450, reducing the judgment in favor of appellee to $500, in which event it was ordered the judgment, as so reduced, would be affirmed. On the 18th day of December, 1919, appellee filed in this court the remittitur required by this court, agreeing to reduce the judgment to $500, and asking that the judgment be affirmed for that amount.

It is therefore ordered that the judgment of reversal be set aside, and the remittitur filed by appellee accepted, and the judgment in favor of appellee reduced to $500, and, as so reduced, such judgment will be affirmed.