### WESTERN UNION TELEGRAPH CO. v. HONEYCUTT et ux. (No. 894.)*

(Court of Civil Appeals of Texas. Beaumont. March 28, 1923. Rehearing Denied April 11, 1923.)

1. **Evidence ⊜75—Failure to present evidence within party's power to produce raises presumption that it was unfavorable to him.**

Where a defendant omits to offer testimony within its power to produce, and such omission is unexplained, the presumption is justified that the testimony would not have aided such party.

2. **Telegraphs and telephones ⊜71—$1,250 held not excessive for failure to deliver telegram announcing mother's illness.**

$1,250 *held* not excessive for a telegraph company's failure to deliver to plaintiff's wife a message that her mother was seriously ill, and not expected to live; it appearing that the message could have been delivered in time for plaintiff's wife to have reached her mother several hours before her death.

3. **Telegraphs and telephones ⊜54(7)—Stipulations limiting time for presentation of claims not binding when not known or agreed to.**

In an action for negligent failure to correctly transmit and promptly deliver a message to plaintiff's wife that her mother was not expected to live, the sender of the message having caused a telephone company to telephone it to defendant telegraph company, stipulations on the back of the blank form on which the agent of the telegraph company wrote the message requiring claims to be presented in 95 days were not binding on plaintiff where not known to the sender nor agreed to by him.

Appeal from District Court, Sabine County; V. H. Stark, Judge.

Action by J. A. Honeycutt and wife against the Western Union Telegraph Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Hamilton & Hamilton, of Hemphill, and F. J. & C. T. Duff, of Beaumont, for appellant. Minton & Lewis, of Hemphill, for appellees.

O'QUINN, J. This is an appeal from a judgment in favor of appellee J. A. Honeycutt for the sum of $1,250, as damages for mental anguish suffered by his wife, Mrs. Inez Honeycutt, due to the negligent failure of appellant to correctly transmit and promptly deliver to her a certain telegram informing her that her mother was seriously ill and not expected to live.

There is practically no dispute as to the facts. On February 11, 1920, Buck Simpson sent the following message from Batesville, Tex., to Mrs. Inez Honeycutt, wife of appellee J. A. Honeycutt, at Hemphill, Tex.:

"Batesville, Texas, February 11, 1920. "Mrs. Inez Honeycutt, Hemphill, Texas. Mother very low. Not expected to live.
"Buck Simpson."

Buck Simpson was a brother of Mrs. Inez Honeycutt, and the "Mother" referred to in the message was the mother of Buck Simpson and Mrs. Inez Honeycutt. The message was over phone from Batesville, Tex., to Uvalde, Tex., and from there to Bronson, Tex., over the wires of appellant, and from there to Hemphill over phone line of the Sabine Citizens' Telephone Company. The message was received at Hemphill, but in such changed form as to its address that it was not deliv-

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused May 23, 1923.

ered until several days after Mrs. Honeycutt's mother had died, and was buried. It appears from the record that when received at Bronson the message was addressed to Jane Z. Honeycutt, and when received at Hemphill it was .addressed to Mrs. James Honeycutt. Appellant impleaded the Sabine Citizens' Telephone Company, alleging that, if the message in question was not promptly delivered, the failure to so deliver same was due to the negligence of said telephone company, and that, in the event any judgment was had against appellant, it have judgment over against.said telephone company.

Appellant asserts:

"The burden being upon plaintiff to prove the delivery of the message in question to the telegraph company, and that same was properly addressed when received by the telegraph company, and plaintiff having failed to meet this requirement, the court should have instructed a verdict for the defendant."

Under this appellant says:

"The burden was on plaintiff to show that when the message was delivered to the telegraph company it was properly addressed."

It is undisputed that Buck Simpson, brother of Mrs. Inez Honeycutt, wife of appellee J. A. Honeycutt, delivered to the Batesville Telephone Company, at Batesville, Tex., on February 11, 1920, the message above quoted. Appellant says:

"The operator, Miss Eugenia Herman, testified that she undertook to phone the message to defendant's agent at Uvalde, and that the message was addressed to Mrs. Inez Honeycutt."

And further says:

"From the time the message was delivered to the telegraph company at Batesville, there is no proof of its wording or how it was addressed until its arrival at Bronson."

Miss Herman testified positively that she correctly transmitted the message to appellant's agent at Uvalde. The only evidence of how the message was addressed when received by appellant's agent at Uvalde was that produced by appellee by the witness Miss Herman. She testified:

"I was operator for the Batesville Telephone Company on February 11, 1920. * * * I telephoned said telegram to the agent or operator of said Western Union Telegraph Company at Uvalde, Tex. The name of the agent of the Western Union Telegraph Company at Uvalde to whom I telephoned said telegram was Mr. Despain; I do not know his initials. I transmitted said telegram to said Western Union Agent at Uvalde, Tex., correctly, and in the exact form and words in which said telegram was delivered to me by the said Buck Simpson."

[1] The agent of appellant at Uvalde, Despain, did not testify, and there is no explanation of why he did not testify. Thus the testimony of Miss Herman, that she transmitted said telegram to appellant's agent in the exact form and words in which it was delivered to her, is uncontradicted. If she did not transmit the address correctly, or if for any reason appellant's agent at Uvalde did not understand correctly the address as given him over the phone by Miss Herman, appellant was in position to have explained the situation, and to have shown what the address was that was given him by Miss Herman by producing its said agent, Despain, and having him to testify, or by taking his depositions and offering them in evidence. It was in the power of appellant to show whether the message was transmitted to and received by its agent at Uvalde, addressed to Mrs. Inez Honeycutt, by either producing the said agent at Uvalde, Despain, who received the message, and having him to testify in person, or by taking his deposition. This was not done. No explanation appears in the record as to why it was not done. The entire omission of appellant to offer such testimony, being unexplained, justifies the presumption that said agent's testimony would not have aided appellant. Welsh v. Morris, 81 Tex. 159, 16 S. W. 744, 26 Am. St. Rep. 801; Railway v. Blair (Tex. Civ. App.) 184 S. W. 566: Railway v. Jones (Tex. Civ. App.) 187 S. W. 719; Liddell v. Gordon (Tex. Civ. App.) 241 S. W. 754; Davis v. Etter & Curtis (Tex. Civ. App.) 243 S. W. 604.

Appellant complains that the answer of the jury to special question No. 2, wherein they found that the Sabine Citizens' Telephone Company was not negligent in failing to deliver the message, was not supported by the evidence. This special question was submitted to the jury at the request of appellant, and they found against appellant's contention. We think there is sufficient evidence in the record to sustain the verdict. The proposition is overruled.

At request of appellant, the court submitted to the jury special question No. 3, in answer to which the jury found that the Sabine Citizens' Telephone Company was not negligent in failing to notify appellant of said telephone company's inability to deliver the message. Appellant complains that said finding is unsupported by the testimony. We think the jury's finding has sufficient support in the record. Patton v. Rucker, 29 Tex. 402; Ward v. Bledsoe, 32 Tex. 252; Cartwright v. Canode, 106 Tex. 507, 171 S. W. 696; Railway v. Marti (Tex. Civ. App.) 183 S. W. 846; Underwood v. Security Life & Annuity Co., 108 Tex. 381, 194 S. W. 585.

[2] Appellant complains that the verdict of the jury awarding damages in the sum of $1,250 is excessive. We think that the record discloses that but for the negligence of appellant the message could have been delivered to Mrs. Honeycutt in time for her to have reached the bedside of her mother several hours before her death. Her mother

remained rational up to her death. Mrs. Honeycutt was greatly grieved and worried because she was deprived of the opportunity of seeing and being with her mother at the time of her death, and because she was deprived of the privilege of attending her burial. The evidence warranted the finding. W. U. T. Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; W. U. T. Co. v. Hill (Tex. Civ. App.) 162 S. W. 382; W. U. T. Co. v. Piner, 9 Tex. Civ. App. 152, 29 S. W. 66; W. U. T. Co. v. Parham (Tex. Civ. App.) 210 S. W. 740; W. U. T. Co. v. Carver, 222 S. W. 333; W. U. T. Co. v. Gest (Tex. Civ. App.) 172 S. W. 183.

Among other defenses relied upon by appellant and specially pleaded in its answer was that it accepted the message for transmission subject to the usual custom and contract contained on the back of the company's blank form, upon which it had a rule that all messages must be written, specially pleading the following of said stipulations:

"Clause 3. The company is hereby made the agent of the sender without liability to forward this message over the lines of any other company when necessary to reach its destination."

"Clause 6. The company will not be liable for damages or statutory penalty in any case where the claim is not 'presented in writing within ninety-five days after the message is filed with the company for transmission,'" .

and alleging that the claim had never been presented to appellant at any time before the filing of this suit. Upon the trial appellant offered in evidence one of its blank forms, and proved that it was the usual and customary form used by appellant for messages which were to be transmitted over its lines. It then offered in evidence the two stipulations above quoted (clauses 3 and 6), which, upon objection of appellee, were excluded. Appellant then offered in evidence the following agreement:

"It is agreed in this case that, if the Western Union Telegraph Company's agent at Uvalde were present, he would testify that, in receiving the message in question, without any admission in respect to how the message was addressed, said message was taken down over the phone and written by him on one of the telegraph company's regular blank forms for telegrams, containing the usual provisions on the back, and that this agreement may be used by the defendant and introduced in evidence at any time during the trial of the case."

Appellant then offered in evidence paragraphs 2 and 4 of its answer, wherein it had pleaded the two foregoing stipulations—clauses 3 and 6 of the provisions on the back of said blank form—which were excluded, and then appellant again offered in evidence said clauses 3 and 6, supra, insisting that under said agreement they were admissible, but upon objection they were again excluded, of which appellant complains.

[3] The undisputed evidence shows that Buck Simpson, the sender of the message, lived in Batesville, Tex., a town some miles distant from Uvalde, Tex., and which was without any telegraph office. It was the custom of the people in Batesville, when desiring to send telegraphic messages, to phone them to appellant's office at Uvalde. On February 11, 1920, Buck Simpson delivered the message in question herein to Miss Eugenia Herman, the agent of the telephone company at Batesville, and she communicated same, over the phone, to appellant's agent at Uvalde. The agent accepted the message, but no mention was made of the message being written upon a blank form of appellant, nor of the stipulations on the back of same. Nothing was said by Despain to Miss Herman, nor by her to Buck Simpson, as to any rule of appellant or as to writing the message upon any blank form or to any stipulations on the back of said form. The agreement introduced simply shows that, when the message was phoned to Despain by Miss Herman, he wrote it down on the blank form, without saying anything to anybody or without getting the consent of Miss Herman or Buck Simpson to do so, and without Simpson's attention being called to it at any time or by any one. Simpson neither saw the form, signed same, nor agreed to same. The purpose of the proposed testimony was to show that the parties to the message were bound by the stipulations on the back of the blank form which were offered in evidence. If the agent of appellant received the message as telephoned to him, without mention of the stipulations on the back of the blank form, upon which he wrote it, and without any evidence or knowledge of their existence on the part of the sender of the message, the law is that such unknown provisions are not binding either as a part of the contract for the transmission of the message or as a regulation of the company. Western Union Telegraph Co. v. Douglass, 104 Tex. 66, 133 S. W. 877–879. It is well established that, where the agent of a telegraph company writes a message on the company's blank, which the sender does not see, sign, nor agree to, the stipulations on the back of such blank form are not binding on the sender. Western Union Telegraph Co., v. Bank (Tex. Civ. App.) 72 S. W. 232–236; Gore v. W. U. T. Co. (Tex. Civ. App.) 124 S. W. 977; Postal Telegraph-Cable Co. v. Prewitt (Tex. Civ. App.) 199 S. W. 316; Western Union Tel. Co. v. Armstrong, 207 S. W. 592.

In Western Union Tel. Co. v. Armstrong, supra, Judge Hodges says:

"The evident purpose of the testimony excluded was to establish the fact that the parties to the message were bound by the contractual stipulation requiring the claim for damages to be presented within 95 days after the cause of action arose. While the particular

objections urged to the introduction of the rule requiring the use of appellant's blanks may have been insufficient to justify its exclusion, the error is immaterial and harmless if the. testimony had no probative force. If it did not, then there is no good reason for reversing this case in order to permit the introduction of testimony valueless when admitted, or which may be excluded upon other grounds. Let us concede that the appellant had adopted a rule requiring its blank forms to be used in receiving messages for transmission. The evidence in this case shows that none was used or authorized to be used by the sender on that occasion. The adoption of the rule when proved could only be regarded as a circumstance tending to show that appellant's agent at Shelbyville, after receiving the message over the telephone, may have recorded it upon one of appellant's blanks on the back of which was the printed stipulation relied upon in this case. Assuming that the agent did this, was that act sufficient to bind the opposite party to the terms of a stipulation of which he was entirely ignorant? A telegraph company cannot escape the legal consequences of its misconduct without the consent of the injured party. A liability which the law imposes upon it remains till it is voluntarily released by the person with whom the company is dealing. If in advance of the transmission of a message the telegraph company desires to secure concessions which relieve it of any part of the legal consequences of a breach of duty, or which bind the other party to a course of procedure different from that prescribed by law and more favorable to the telegraph company, there must be a valid contract to that effect. The making of contracts with telegraph companies is in all material respects governed by the same rules that control the making of contracts generally. The stipulations and terms must be knowingly and voluntarily agreed to by the party they undertake to bind. It is true that telegraph companies, as public service corporations, have the right to adopt and enforce reasonable rules for the regulation of their dealings with the public; but this does not include the power to indirectly compel the senders of messages, and other beneficiaries, to surrender any part of their legal rights in claims for damages resulting from a breach of duty. Telegraph companies cannot, under the guise of exercising a rule-making power, secure an immunity which only a contract can give. They will not be permitted to adopt a rule requiring all messages tendered for transmission to be written upon their blank forms, and then provide as their only forms those which contain printed stipulations imposing conditions and limitations upon the liability of the company. Those who deal with such corporations are entitled, if they insist upon it, to have their messages transmitted and delivered free from all conditions or limitations except those imposed by the law of the land. When a surrender of any part of that right is claimed, the telegraph company must be able to establish a valid agreement to that effect.

"If in this case the court had admitted in evidence the rule and the printed stipulation offered, the evidence would not have made out the defense for which it was intended. The important question before the court was, not what the telegraph company did under its rule-making power, but what the parties to the contract agreed to at the time this message was sent. The appellant offered no other evidence tending to show that the message was reduced to writing in any form or upon any character of blank. It may be, and doubtless is, correct to say that one who voluntarily uses, without objection, a telegraphic blank which bears upon its face notice that the message is sent subject to the conditions and stipulations appearing on the back, is chargeable with a knowledge of those conditions and stipulations, and, in the absence of some express dissent, becomes bound by them; but it does not follow that one who delivers an oral message to an agent of the telegraph company can be obligated to those conditions by the unauthorized act of such agent in recording the message upon one of those blanks for convenience in transmission. In this instance, when the appellant's agent at Shelbyville accepted the oral message from Landers over the telephone the contract between Landers and appellant was completed, and it is of no consequence what the agent thereafter did without the knowledge or the consent of Landers."

And writ of error was refused.

No error being shown, the judgment is affirmed.